1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | JEREMY FRIEDLANDER, State Bar No. 125138
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5974
Fax: (415) 703-1234
8 | Email: Jeremy.Friedlander@doj.ca.gov

9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13 |

14 | **ANDREW WADSWORTH,** | C 07-5241 MMC

15 | Petitioner,

16 | v.

17 | **MATTHEW C. KRAMER, Warden, and the ATTORNEY GENERAL OF THE STATE OF**
18 | **CALIFORNIA,**

19 | Respondents.

20 |

21 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION TO WRIT OF HABEAS CORPUS**

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

## TABLE OF CONTENTS

2   **Page**

3   STATEMENT OF THE CASE   1

4   STATEMENT OF FACTS   2

5   STATEMENT OF REVIEW   3

6   ARGUMENT   4

7    I.   THE STATE SUPREME COURT REASONABLY REJECTED PETITIONER'S CLAIMS THAT TRIAL COUNSEL
8   PERFORMED INEFFECTIVELY BY FAILING TO ASK PETITIONER WHETHER HE WAS ENRAGED WHEN HE
9   SHOT YOUNG AND/OR BY FAILING TO REQUEST AN INSTRUCTION ON HEAT OF PASSION VOLUNTARY
10   MANSLAUGHTER.   4

11    II.   THE STATE APPELLATE COURTS REASONABLY REJECTED PETITIONER'S CLAIMS THAT (A) THE TRIAL
12   COURT VIOLATED THE CONSTITUTION BY FAILING TO ADMIT FOR THEIR TRUTH YOUNG'S REPORTED
13   STATEMENTS THAT YOUNG HAD SHOT PERSONS IN THE PAST OR (B) DEFENSE COUNSEL DEPRIVED PETITIONER
14   OF EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO FIND WITNESSES TO TESTIFY THAT YOUNG HAD DONE
15   SO.   8

16    III.   THE STATE APPELLATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT THE TRIAL COURT
17   VIOLATED DUE PROCESS BY ADMITTING PRIOR ACTS OF MISCONDUCT TO IMPEACH PETITIONER AND ANOTHER
18   WITNESS FOR THE DEFENSE.   11

19   CONCLUSION   13

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Woodford*
366 F.3d 823 (9th Cir. 2004)                                             11

*Bell v. Cone*
535 U.S. 685 (2002)                                                      5

*Bragg v. Galaza*
242 F.3d 1082 (9th Cir. 2001)                                           11

*Chambers v. Mississippi*
410 U.S. 284 (1973)                                                     9, 10

*Dows v. Wood*
211 F.3d 480 (9th Cir. 2000)                                            11

*Early v. Packer*
537 U.S. 3 (2002) (per curiam)                                          4

*Estelle v. McGuire*
502 U.S. 62 (1991)                                                      12

*Fry v. Pliler*
___ U.S. ___, 127 S.Ct. 2321 (2007)                                    10

*Hernandez v. Small*
282 F.3d 1132 (9th Cir. 2002)                                           4

*Houston v. Roe*
177 F.3d 901 (9th Cir. 1999)                                           12

*Leavitt v. Arave*
383 F.3d 809 (9th Cir. 2004)                                           12

*Mitchell v. Esparza*
540 U.S. 12 (2003) (per curiam)                                         4

*People v. Barton*
12 Cal.4th 186 (1995)                                                  6, 7

*People v. Borchers*
50 Cal.2d 321 (1958)                                                    6

*People v. Breverman*
19 Cal.4th 142 (1998)                                                   5

*People v. Bridgehouse*
47 Cal.2d 406 (1956)                                                    6

**TABLE OF AUTHORITIES  (continued)**

1

**Page**

2

*People v. Castro*
3  8 Cal.3d 301 (1985)                                                    12

*People v. Cole*
4  33 Cal.4th 1158 (2004)                                                 5, 6

5
*People v. Lawley*
6  27 Cal.4th 102 (2002)                                                  9

*People v. Manriquez*
7  37 Cal.4th 547 (2005)                                                  6

8
*People v. Najera*
9  138 Cal.App.4th 212 (2006)                                             6

*People v. Steele*
10  27 Cal.4th 1230 (2002)                                                5

11
*People v. Waidla*
12  22 Cal.4th 690 (2000)                                                 5

*People v. Wharton*
13  53 Cal.3d 522 (1991)                                                  7

14
*People v. Wheeler*
15  4 Cal.4th 284 (1992)                                                  12

*Siripongs v. Calderon*
16  133 F.3d 732 (9th Cir. 1998)                                          6

17
*Strickland v. Washington*
18  466 U.S. 668 (1984)                                                   5-8

*United States v. Berry*
19  814 F.2d 1406 (9th Cir. 1989)                                         11

20
*United States v. Green*
21  882 F.2d 999 (5th Cir. 1989)                                          11

*Williams v. Taylor*
22  529 U.S. 362 (2000)                                                   3

23
*Woodford v. Visciotti*
24  537 U.S. 19 (2002) (per curiam)                                       3-5

*Yarborough v. Gentry*
25  540 U.S. 1 (2003) (per curiam)                                        5

26

27

28

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

iii

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Statutes**

California Evidence Code
      § 352                                               12
      § 1230                                              9

California Penal Code
      § 1203.06(a)(1)                               1
      § 1203.075                                  1
      § 12022.53(d)                               1

United States Code
      Title 28 § 2254(d)(1)                        3

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996        3-5, 7, 8

California Jury Instructions, Criminal
      No. 8.20                                         7

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JEREMY FRIEDLANDER, State Bar No. 125138
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5974
     Fax:  (415) 703-1234
8    Email:  Jeremy.Friedlander@doj.ca.gov

9  Attorneys for Respondent

10               IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14  **ANDREW WADSWORTH,** | C 07-5241 MMC |
| 15                          Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 16                          v. | **SUPPORT OF ANSWER TO PETITION FOR WRIT OF** |
| 17  **MATTHEW C. KRAMER, Warden, and the ATTORNEY GENERAL OF THE STATE OF** | **HABEAS CORPUS** |
| 18  **CALIFORNIA,** | |
| 19                          Respondents. | |

20

21                  **STATEMENT OF THE CASE**

22        On June 23, 2004, petitioner was convicted in a jury trial of the first degree murder of

23  Antonio Young.  The jury also found true the allegations that in committing the crime petitioner

24  intentionally discharged a firearm and caused great bodily injury and death (Cal. Penal Code §

25  12022.53(d)), personally used a firearm (Cal. Penal Code § 1203.06(a)(1)), and intentionally inflicted

26  great bodily injury (Cal. Penal Code § 1203.075).  CT 252, 254.

27        On September 14, 2004, petitioner was sentenced to 50 years to life:  25 years to life for

28  the first degree murder and 25 years to life for the firearm use with great bodily injury.  CT 257-60.

1    On November 14, 2006, the California Court of Appeal for the First Appellate District,

2  Division Two, affirmed the judgment. Exh. J. On January 17, 2007, the California Supreme Court

3  denied petitioner's petition for review. Exh. K. On July 11, 2007, the state supreme court denied

4  petitioner's petition for a writ of habeas corpus. Exh. L.

5    On October 12, 2007, petitioner filed the instant petition. On October 22, 2007, the Court

6  issued an order to show cause.

7  <div align="center">**STATEMENT OF FACTS**</div>

8    The following is an overview of the evidence, taken from the introduction to the statement

9  of facts in the respondent's brief in the state appellate court on direct appeal. Exh. H at 4022. A

10  more detailed summary of the evidence appears in the rest of the statement of facts and in the state

11  appellate court's opinion. Exh. J at 2-9.

12    On the night of August 16, 2001, petitioner killed Antonio Young by shooting him at close

13  range with all five bullets in a five-shot .38 caliber revolver. The defense was self-defense, based

14  primarily on testimony from petitioner that Young did the following before petitioner shot him: (1)

15  he took out a gun from his coat pocket, then put it back in; (2) he said, "I heard you and your uncle

16  were going to shoot me" (or a similar statement); and (3) he then reached into his pocket and tried

17  to remove the gun.

18    Arrested on the night of the shooting, petitioner first denied, then admitted to the police

19  that he shot Young. After telling the police at least twice (both before and after the interrogators

20  began tape-recording the interview) that he did not see Young holding a gun before the shooting,

21  petitioner then said Young showed him a gun just beforehand. Even though the police asked

22  petitioner what Young said when he showed petitioner the gun, petitioner failed to say that Young

23  made the statement about petitioner or his uncle intending to shoot Young. Petitioner's testimony

24  at trial differed from his statement to the police in other significant respects as well.

25    No gun was found on or near Young when the police reached him, five minutes or less

26  after the shooting.

27    The shooting took place late at night in a residential neighborhood. There was no evidence

28  that anyone other than petitioner and Young witnessed the shooting or removed a gun from the body

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1    or the area around it.

2    Young was carrying a holster in his pocket. The defense assumed that the holster had

3    contained a gun. RT 959. The prosecutor argued that a gun could not have fit in the holster and

4    been retrievable by Young without him reaching into his pocket with two hands. RT 968-69.

5    Petitioner testified that Young reached into his pocket with one hand to get the gun.

6    The shooting took place after petitioner and Young were on Rossmoor Avenue—petitioner

7    on a bicycle, Young on foot. Rossmoor Avenue is a one-block street, running north from Ashton

8    and ending at Rossmoor Court. Rossmoor Court runs one block west from Rossmoor Avenue to

9    Clara Street and also east from Rossmoor Avenue as a short cul de sac. Young's body was found

10    on the pavement in the interior of the cul de sac. The prosecutor argued that petitioner brought

11    Young into the cul de sac in order to kill him. RT 928, 972-73. According to petitioner, the

12    shooting occurred at the corner of Rossmoor Avenue and Rossmoor Court. Evidence elicited by

13    defense counsel suggested that Young could have moved into the cul de sac after he was shot. The

14    bicycle was found in the cul de sac near Young's body. Petitioner testified that he released the

15    bicycle before shooting Young. Neither petitioner nor defense counsel explained how the bicycle

16    managed to move into the cul de sac in the same direction as Young. In his statement to the police,

17    petitioner said he was in the cul de sac when the shooting occurred.

18    <div align="center">**STATEMENT OF REVIEW**</div>

19    A federal habeas court reviews the state court's ruling under a "highly deferential"

20    standard imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

21    *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). The federal court has no authority to

22    grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable

23    application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A "contrary"

24    decision is one that arrives at a conclusion opposite one reached by the Supreme Court on a question

25    of law. *Williams v. Taylor,* 529 U.S. 362, 413 (2000). An "unreasonable" decision applies the law

26    to the facts in a manner that is not merely erroneous, but objectively unreasonable. *Id.* at 411-13.

27    The petitioner bears the burden of showing that the state court's decision was unreasonable.

28    *Visciotti,* 537 U.S. at 25.

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1    A state court does not act contrary to the applicable law "so long as neither the reasoning

2 nor the result of the state-court decision contradicts" it. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per

3 curiam). By the same token, a state court may use imprecise or shorthand language to describe the

4 applicable rule. *See Woodford v. Visciotti*, 537 U.S. at 23-24. A federal court in an AEDPA habeas

5 case reviews the reasonableness of the state court's ultimate decision, not the reasoning process by

6 which the court reached that decision. *See Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002)

7 (intricacies of state court's analysis unimportant; what matters was whether the state court's decision

8 was contrary to controlling federal law). A state court need not cite or demonstrate an awareness of

9 Supreme Court cases as long as its reasoning and result do not contradict them. *Mitchell v. Esparza*,

10 540 U.S. 12, 16 (2003) (per curiam).

11                                     **ARGUMENT**

12                                          **I.**

13    **THE STATE SUPREME COURT REASONABLY REJECTED
      PETITIONER'S CLAIMS THAT TRIAL COUNSEL PERFORMED**

14    **INEFFECTIVELY BY FAILING TO ASK PETITIONER WHETHER HE
      WAS ENRAGED WHEN HE SHOT YOUNG AND/OR BY FAILING TO**

15    **REQUEST AN INSTRUCTION ON HEAT OF PASSION VOLUNTARY
      MANSLAUGHTER.**

16

17    Petitioner contends that trial counsel deprived him of effective assistance of counsel in two

18 ways. First, petitioner says trial counsel inadequately investigated the defense of heat of passion

19 voluntary manslaughter in that he failed to ask petitioner at trial "if he was enraged or acting in the

20 hea[t] of passion[]" when he shot Young. P&A's at 11. Second, petitioner says trial counsel acted

21 ineffectively by failing to ask the trial court to instruct the jury on heat of passion manslaughter.

22 P&A's at 12.

23    Petitioner supports the first claim with a declaration in which he states that (a) he was

24 "enraged and acting in the heat of passion when [he] shot . ... Young[;]" (b) he was enraged because

25 "Young had displayed a firearm to me, and had made an implied threat to me seconds before I shot

26 him[;]" and (c) defense counsel never asked petitioner if he was "enraged or in the heat of passion

27 when [he] shot . . . Young. . . ." Decl'n. of Petitioner, following Pet. at 6.

28    Under California law, heat of passion voluntary manslaughter is a lesser included offense

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1  of murder (*People v. Cole*, 33 Cal.4th 1158, 1215 (2004)), the crime with which petitioner was

2  charged. A trial court has a duty to instruct on a lesser included offense if substantial evidence

3  supports a finding that the defendant committed the lesser offense but not the greater. *People v.*

4  *Waidla*, 22 Cal.4th 690, 733 (2000); *People v. Breverman*, 19 Cal.4th 142, 162 (1998). Substantial

5  evidence is evidence that a reasonable jury could find persuasive. *People v. Cole*, 33 Cal.4th at

6  1215. Heat of passion voluntary manslaughter has both an objective and a subjective component:

7  the defendant must actually kill under a heat of passion, and the circumstances under which he acted

8  must be such as to arouse a heat of passion in the mind of an ordinarily reasonable person. *People*

9  *v. Steele*, 27 Cal.4th 1230, 1252-53 (2002).

10  The state appellate court found that the trial court did not err in failing to instruct on heat

11  of passion manslaughter because no substantial evidence supported the conclusion that petitioner had

12  in fact acted in a heat of passion (the first, subjective element). Exh. J at 12-13. Respondent

13  assumes for purposes of argument that the defense would have produced adequate evidence of that

14  element if defense counsel had asked petitioner the questions petitioner says he should have asked

15  him. Petitioner's claim of ineffective assistance still fails.

16  To prevail in a claim of ineffective assistance of counsel, a defendant must make a two-

17  prong showing (*Strickland v. Washington*, 466 U.S. 668, 687 (1984)):  first, that particularly

18  identified acts or omissions of counsel were "outside the wide range of professionally competent

19  assistance" (*id.* at 690), and second, that had counsel acted as the defendant says he should have,

20  there was a reasonable probability of a result more favorable to the defense. *Id.* at 694. With respect

21  to the first prong, the defendant must overcome a strong presumption that the challenged action

22  might be considered sound trial strategy. *Id.* at 689. With respect to the second, the defendant must

23  show a reasonable probability that the outcome would have been different if counsel had not erred.

24  *Id.* at 694. AEDPA makes review of counsel's performance "doubly deferential" (*Yarborough v.*

25  *Gentry*, 540 U.S. 1, 6 (2003) (per curiam)), since the defendant must also show that the state applied

26  *Strickland* unreasonably (*Bell v. Cone*, 535 U.S. 685, 698-699 (2002)), i.e., in an objectively

27  unreasonable manner. *Woodford v. Visciotti*, 537 U.S. at 25 (per curiam). Petitioner has not come

28  close to showing an unreasonable application of *Strickland* on either the performance or the

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1 | prejudice prongs.

2    The relevant inquiry as to the performance prong of the *Strickland* test is not what counsel

3 could have pursued but whether the choice counsel made was reasonable. *Siripongs v. Calderon*,

4 133 F.3d 732, 736 (9th Cir. 1998).    Petitioner ignores the defense that defense counsel

5 presented—self-defense.  He likewise fails to show that counsel's choice of that defense over heat

6 of passion was unreasonable or that the state supreme court could not reasonably have found that it

7 was reasonable.  Self-defense was hardly a strong defense, but the state supreme court could

8 reasonably have concluded that counsel could reasonably have thought self-defense to be far better

9 than heat of passion. It was uncontested that Young had a holster, albeit an empty one. Accordingly,

10 independent evidence suggested that he could have had a gun, which in turn supported the self-

11 defense claim.  No independent evidence supported the notion that Young insulted petitioner or,

12 even if he did, that the insult was one sufficient to support a heat of passion defense.  The statement

13 petitioner attributed to Young—that Young had heard that petitioner and his uncle "were out to kill

14 me" (RT 768)—is not one that would enrage a reasonable person.  *See People v. Manriquez*, 37

15 Cal.4th 547, 586 (2005) (inadequate provocation for heat of passion where victim called defendant

16 a "mother fucker" and taunted defendant by repeatedly saying defendant should use his gun if he had

17 one); *People v. Najera*, 138 Cal.App.4th 212, 254 (2006) (taunt of "faggot" insufficient provocation

18 to reduce murder to heat of passion manslaughter). *See also People v. Cole*, 33 Cal.4th at 1216

19 (insufficient evidence of provocation where the defendant and the victim were arguing as they

20 normally did in their relationship).   Certainly, the state supreme court could reasonably have

21 concluded that trial counsel could reasonably have determined that the evidence of provocation was

22 unpersuasive.

23    Petitioner identifies no case in which the facts were comparable.  He cites two old cases

24 of romantic infidelity (*People v. Bridgehouse*, 47 Cal.2d 406, 414 (1956) and *People v. Borchers*,

25 50 Cal.2d 321, 328 (1958)) and does not even attempt to show how they are factually comparable

26 to this case. P&A's at 12-13. Petitioner does make the attempt with *People v. Barton*, 12 Cal.4th

27 186, 202 (1995) (P&A's at 12), but it is unavailing.  The defendant in *Barton* testified that his

28 daughter told him shortly before the killing that the deceased tried to run her car off the road and spat

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1  on the window of her car. In the ensuing confrontation between the defendant and the deceased, the

2  deceased called the daughter a bitch, acted berserk, and challenged the defendant to a fight. When

3  the defendant asked his daughter to call the police, the deceased got in his car and taunted the

4  defendant. Petitioner finds the evidence here more supportive of heat of passion than was the

5  evidence in *Barton* because "Antonio Young used far more than mere words and fighting stances."

6  P&A's at 12. Petitioner does not explain what he means by "far more." He neither specifies the

7  evidence to which he is referring nor shows how it constituted "far more" evidence of provocation

8  than in *Barton*. Whatever "far more" evidence of provocation petitioner is referring to was

9  indistinguishable from the evidence the defense said showed the need for self-defense, which means

10 that defense counsel did not unreasonably choose self-defense over heat of passion. In any event,

11 what Young allegedly did was nothing like the ongoing incendiary behavior of the decedent in

12 *Barton*. Here there was no taunting, threatening and insulting of the defendant's child, spitting, or

13 issuing of a challenge to fight.

14          As to the prejudice prong of *Strickland*, petitioner fails to apply the appropriately

15 deferential AEDPA standard of review and ignores at least two salient facts that show no prejudice.

16 First, the jury was instructed on second degree murder and on unreasonable self-defense voluntary

17 manslaughter, yet rejected them both in favor of a finding of first-degree (i.e., premeditated) murder.

18 Second, the jury was instructed

19          If the evidence[] establishes that there was provocation which played a part in
            inducing an unlawful killing of a human being, but that provocation was not sufficient to
20          reduce the homicide to manslaughter, you should consider the provocation for the bearing
            it may have on whether the defendant killed with or without premeditation and
21          deliberation.

22 RT 1001; CALJIC No. 8.20. Thus, by convicting petitioner of first degree murder, rather than

23 second degree, the jury necessarily rejected any notion that provocation negated premeditation. The

24 jury likewise made clear that it would have rejected heat of passion manslaughter had it been given

25 the option. *See People v. Wharton*, 53 Cal.3d 522, 572 (1991) (failure to instruct that provocation

26 could occur over a considerable period of time was harmless where jury convicted defendant of first

27 degree murder after having been instructed that premeditation must have been formed upon pre-

28 existing reflection and not upon sudden heat of passion). Certainly, the state supreme court could

1    have so concluded.

2         Petitioner argues, "Because there was substantial evidence of provocation, it cannot be

3    reasonably said that the jury would have rejected the provocation testimony in favor of the

4    prosecution's theory." P&A's at 13.  Petitioner can make such an argument only by confusing the

5    bare minimum "substantial evidence" standard, by which one gauges whether the defense is entitled

6    to an instruction on a given issue, with AEDPA's "reasonable application" review of the *Strickland*

7    "reasonable probability" prejudice test, a more demanding standard and the appropriate one here.

8    Not surprisingly, petitioner offers no authority and ignores AEDPA.

9         The foregoing analysis disposes of petitioner's other contention: that defense counsel

10   should have asked for an instruction on heat of passion manslaughter.  Since defense counsel could

11   reasonably have decided not to elicit an assertion from petitioner that he acted in a heat of passion,

12   and since the defense would not have profited anyway, as shown above, it follows that counsel did

13   not deprive petitioner of effective assistance of counsel by failing to ask for a heat of passion

14   instruction.[1]/

15   <center>**II.**</center>

16   **THE STATE APPELLATE COURTS REASONABLY REJECTED
     PETITIONER'S CLAIMS THAT (A) THE TRIAL COURT VIOLATED**

17   **THE CONSTITUTION BY FAILING TO ADMIT FOR THEIR TRUTH
     YOUNG'S REPORTED STATEMENTS THAT YOUNG HAD SHOT**

18   **PERSONS IN THE PAST OR (B) DEFENSE COUNSEL DEPRIVED
     PETITIONER OF EFFECTIVE ASSISTANCE OF COUNSEL BY**

19   **FAILING TO FIND WITNESSES TO TESTIFY THAT YOUNG HAD
     DONE SO.**

20

21        Petitioner testified that Young had told him before the night of the shooting that he

22   (Young) had twice previously shot persons. RT 741-42.  The trial court said it was assuming that

23   _____

24       1. Petitioner presented one version of this part of his ineffective assistance claim to the
     intermediate state appellate court on direct appeal.  The court rejected it by finding that there was

25   no substantial evidence that petitioner acted in a heat of passion. Opn. [Exh. J] at 13.  Petitioner
     apparently takes the position that there would have been substantial evidence of heat of passion had

26   defense counsel asked him whether he was enraged.  Petitioner presented that version of the
     ineffective assistance claim to the state supreme court in his state habeas petition.  That court

27   rejected the claim without comment.  This Court reviews that decision (rather than the state
     intermediate appellate court's rejection of the other version of the claim).  For the reasons set forth

28   in the text, the state supreme court's decision was a reasonable application of *Strickland*.

1 Young's reported statements were admitted "not for the truth of what is being said, but the mere fact

2 they were being said for a non-hearsay purpose," and defense counsel agreed. RT 742. The court

3 instructed the jury that the statement was offered to show that it was made, not for the truth of what

4 the declarant said. RT 742. Petitioner contends that Young's reported statements should have been

5 admitted for their truth because, assertedly, they were declarations against interest (P&A's at 19)

6 and, moreover, that by limiting them as it did, the trial court violated the rule of *Chambers v.*

7 *Mississippi,* 410 U.S. 284 (1973) (P&A's at 20-21), which, according to petitioner, held that the

8 exclusion of an admission against penal interest violated the Constitution. P&A's at 20. Petitioner

9 also contends that trial counsel deprived him of effective assistance of counsel in that he "failed to

10 investigate other witnesses who could have corroborated petitioner Wadsworth's testimony that

11 Antonio Young had shot persons in the past." P&A's at 21.

12 The state appellate court rejected the first part of the claim by finding that the statement

13 failed to qualify as a statement against interest under state law because it was not sufficiently reliable

14 to warrant admission despite its hearsay character. Exh J at 14; *citing* Cal. Evid. Code § 1230 and

15 *People v. Lawley,* 27 Cal.4th 102, 153 (2002). Petitioner says the state appellate court's ruling

16 constituted "a misapplication of the clear United States Supreme Court case of *Chambers v.*

17 *Mississippi.*" P&A's at 21.

18 Petitioner's claim fails because it utterly misreads *Chambers.* The defendant in that case

19 sought to present evidence that a third person had spontaneously confessed to several acquaintances

20 that he committed the murder with which the defendant was charged. The third person had signed

21 a written confession but had renounced it prior to trial. At trial he denied that he had been at the

22 scene. The evidence of the confession was excluded under a state hearsay rule. The High Court held

23 that the rule violated the Constitution by excluding evidence that the Court found to have substantial

24 assurances of trustworthiness and to be critical to the defense. *Id.* at 302. Accordingly, for petitioner

25 to prevail here he would have to show (1) that the reported statement by Young (that he had shot two

26 persons) had substantial assurances of trustworthiness and was critical to the defense, and (2) that

27 the state appellate court could not reasonably have found otherwise. Petitioner has not attempted

28 to meet this burden, and nothing in the record suggests that he could. On this record, petitioner

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1  might simply have concocted the statements he attributed to Young, and even if Young made them,

2  he could simply have been bragging, as teenagers are apt to do. Nor was the truth of the statement

3  critical to the defense, under *Chambers*. In that case, the statement exonerated the defendant. In this

4  case, the statement could have indicated simply that the decedent had defended himself in the past

5  with deadly force, in which case the statement was more likely to incriminate than exculpate.[2/]

6  The truth of the statement was not critical to the defense for another reason. As far as this

7  record shows, petitioner had no way of knowing whether Young's supposed statements were true.

8  Accordingly, their truth was irrelevant. All that mattered for petitioner's defense of self-defense and

9  imperfect self-defense was that petitioner might have believed that Young was ready to shoot him,

10  given that, supposedly, Young had said he had used a weapon in the past. Defense counsel made

11  this point in closing argument. RT 955.[3/] Petitioner does not explain how the defense would have

12  been any more persuasive if Young's statements had been admitted for their truth.

13  Petitioner's claim that trial counsel performed ineffectively is even less persuasive.

14  Petitioner says counsel should have found witnesses "who could have corroborated petitioner

15  Wadsworth's testimony that Antonio Young had shot persons in the past." P&A's at 21. To begin

16  with, petitioner misstates the record. He did not testify that Young had shot persons in the past. He

17  testified that Young *said* he had shot persons in the past. In any event, nothing in the record suggests

18  that anyone else had heard Young make such a statement or that anyone had seen him do any

19  shooting. In his declaration, petitioner states that trial counsel "never asked me how he could locate

20  any witnesses that Antonio Young had shot people on two occasions prior to August 16, 2001" and

21  that, as far as petitioner knew, trial counsel "made no effort to investigate" whether Young had done

22  _____

23  2. For the same reasons that the evidence was not critical to the defense, the claim fails
    because any erroneous exclusion of the evidence was non-prejudicial. *See Fry v. Pliler*, ___ U.S.
24  ___, 127 S.Ct. 2321, 2328 (2007) (defense evidence excluded in arguable violation of *Chambers*;
    regardless of prejudice test state appellate court applied, defendant in federal habeas case entitled
25  to no relief absent finding that exclusion of the evidence had a substantial and injurious effect on the
26  verdict).

27  3. The prosecutor effectively rebutted it, pointing out that if Young had indeed told petitioner
    of shooting other people, petitioner would not have said so for the first time only at trial, as he did.
28  RT 974-75.

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

1 so. Pet's Decl'n. Petitioner fails to state that any such witnesses existed, nor does he point to any

2 indication in the record that they did.  Accordingly, petitioner is in effect asking this Court to blame

3 counsel for inadequate investigation by speculating that witnesses might have existed who would

4 have said what petitioner wants them to have said.  Speculation is an inadequate basis to find an

5 inadequate investigation.  In the absence of a declaration by the witnesses demonstrating what they

6 would have said at trial, petitioner cannot meet his burden of affirmatively showing prejudice from

7 the failure to call the witnesses.  *Allen v. Woodford*, 366 F.3d 823, 846 n. 2 (9th Cir. 2004) ("the

8 district court correctly disregarded the failure to call [three named witnesses], because Allen failed

9 to make a showing that they would have testified if counsel had pursued them as witnesses"); *Dows*

10 *v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (petitioner presented no evidence that alleged alibi

11 witness "actually exists, other than Dows'' self-serving affidavit," and could not show that witness

12 would have presented helpful testimony because he failed to present affidavit from witness); *Bragg*

13 *v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001), amended 2001 U.S. App. LEXIS 12391 (petitioner

14 failed to identify what witness would have said, thus claim was wholly speculative); *United States*

15 *v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989) (petitioner "offers no indication of what these

16 witnesses would have testified to, or how their testimony might have changed the outcome of the

17 hearing"); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a

18 failure to investigate on the part of his counsel must allege with specificity what the investigation

19 would have revealed and how it would have altered the outcome of the trial.").

20 　　　　One must conclude that the state supreme court did not unreasonably reject petitioner's

21 ineffective assistance claim.

22 **III.**

23 **THE STATE APPELLATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT THE TRIAL COURT VIOLATED DUE**
24 **PROCESS BY ADMITTING PRIOR ACTS OF MISCONDUCT TO IMPEACH PETITIONER AND ANOTHER WITNESS FOR THE**
25 **DEFENSE.**

26 　　　　Tracy Hill testified for the defense that on four or five occasions (RT 708) in five or six

27 years (RT 712) she saw Young with a little handgun either in a holster on his leg (RT 708, 713) or

28 on his side in his waistband.  RT 708.  Hill was impeached with evidence that she had been

1  convicted of selling cocaine, stealing from stores, assaulting a police officer, and prostitution. RT

2  708-09. Petitioner himself was impeached with evidence of an incident in which he allegedly

3  brandished a gun (RT 722, 748-50) and with evidence that he was a drug dealer. RT 745-47. Over

4  objection by the defense, the trial court ruled that Hill's felony convictions and petitioner's non-

5  felonious conduct were admissible for impeachment. RT 703-04. Without citation to a single case,

6  petitioner asserts that admission of the evidence violated due process. P&A's at 22-24. Noting

7  petitioner's lack of authority, the state appellate court rejected the claim by citing well-established

8  state case law. Exh. J at 15.

9          Federal authority dictates the same result. The admission of evidence against a defendant

10 violates due process only if its admission renders the trial fundamentally unfair. *See Estelle v.*

11 *McGuire*, 502 U.S. 62, 67-68 (1991). Evidence may violate due process only if no permissible

12 inference may be drawn from it. *Leavitt v. Arave*, 383 F.3d 809, 829 (9th Cir. 2004); *Houston v.*

13 *Roe*, 177 F.3d 901, 910 (9th Cir. 1999). Petitioner does not attempt to explain why a trial is rendered

14 fundamentally unfair, or why a fact finder may not make a permissible inference about a witness's

15 credibility (or lack thereof), when (as permitted under state law) a witness is impeached with

16 evidence tending to show that the witness is dishonest. *People v. Wheeler*, 4 Cal.4th 284, 295-96

17 (1992) (subject to Cal. Evidence Code § 352, past misconduct involving moral turpitude is

18 admissible to impeach a witness in a criminal trial); *People v. Castro*, 38 Cal.3d 301, 314-15 (1985)

19 (misconduct involving moral turpitude suggests a willingness to lie).

20 //

21 //

22 //

23 //

24 //

25

26

27

28

1

**CONCLUSION**

2          For the reasons stated, respondent requests that the petition be denied and the order to

3 show cause be discharged.

4          Dated: December 11, 2007

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

7                              DANE R. GILLETTE
                               Chief Assistant Attorney General
8
                               GERALD A. ENGLER
9                              Senior Assistant Attorney General

                               PEGGY S. RUFFRA
10                             Supervising Deputy Attorney General

11

12                             /s/ Jeremy Friedlander

13                             JEREMY FRIEDLANDER
                               Deputy Attorney General

14                             Attorneys for Respondent

15 JF:er

16 40192072.wpd
   SF2007402955

17

18

19

20

21

22

23

24

25

26

27

28

Memo Of P&A's In Support Of Answer - *Wadsworth v. Kramer* - C 07-5241 MMC

13