IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW WADSWORTH,                    ) No: _____
    Petitioner,                      )
                                      )
                                      ) PETITION AND MEMORANDUM
                                      )  IN SUPPORT OF PETITION <u>FOR</u>
                                      )  <u>WRIT OF HABEAS CORPUS</u>
MATTHEW C. KRAMER, WARDEN             )
AND THE ATTORNEY GENERAL             )
OF THE STATE OF CALIFORNIA           )
_____ )

PETITION AND MEMORANDUM IN SUPPORT OF WRIT OF HABEAS CORPUS

FREDERIC BAKER (SBN: 50055)
Attorney at Law
San Francisco Design Center
2 Henry Adams, Suite M 71
San Francisco, CA 94103
(415) 626-5133
Attorney for Petitioner Andrew Wadsworth

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE ................................................................. 1

STATEMENT OF FACTS .................................................................... 3

PROSECUTION'S CASE ................................................................... 3

THE DEFENSE CASE ...................................................................... 8

THE PETITIONER'S ARGUMENTS ..................................................... 10

I    PETITIONER WAS DENIED HIS RIGHT TO COUNSEL UNDER THE
     SIXTH AND FOURTENTH AMENDMENTS TO THE CONSTITUTION
     OF THE UNITED STATES OF AMERICA AND IT IS REASONABLY
     PROBABLE THAT A DIFFERENT OUTCOME WOULD HAVE
     OCCURRED UNDER STRICKLAND V. WASHINGTON: THE
     DECISION OF THE COURT OF APPEAL OF THE STATE OF
     CALIFORNIA WAS AN UNREASONABLE APPLICATION OF
     STRICKLAND V. WASHINGTON ................................................. 10

     TRIAL COUNSEL FAILED TO REQUEST PROPER
         JURY INSTRUCTION ...................................................... 12

II   THE LIMITATION OF ANTONIO YOUNG'S STATEMENT THAT HE
     HAD SHOT PEOPLE ON TWO DIFFERENT OCCASIONS IN THE
     PAST TO NOT PROVE THE TRUTH OF THE STATEMENTS WAS A
     VIOLATION OF THE PETITIONER 'S DUE PROCESS RIGHTS
     UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
     UNITED STATES CONSTITUTION AND HIS RIGHT TO PRODUCE
     WITNESSES UNDER THE SIXTH AMENDMENT TO THE UNITED
     STATES CONSTITUTION; THE TESTIMONY WAS ADMISSABLE
     UNDER THE UNITED STATES SUPREME COURT CASE OF
     CHAMBERS V. MISSISSIPPI; FURTHERMORE, HIS TRIAL
     COUNSEL'S CONCESSION TO THE TRIAL COURT'S LIMITING
     INSTRUCTION WAS A VIOLATION OF THE PETITIONER'S RIGHT
     TO COUNSEL UNDERTHE SIXTH AMENDMENT ...................... 17

     A.    ANTONIO YOUNG'S STATEMENT TO APPELLANT
           WADSWORTH WAS ADMISSIBLE AS AN EXCEPTION TO
           THE HEARSAY RULE FOR DECLARATIONS AGAINST
           PENAL INTEREST .................................................... 19

     B.    THE EXCLUSION OF THE STATEMENTS DEPRIVED THE
           PETITIONER OF HIS RIGHT TO SUPUENA WITNESSES,
            PRESENT A DEFENSE, AND A FAIR TRAIL UNDER THE

FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES AND HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ................................................................. 20

III.   THE ADMISSION OF PRIOR ACTS OF MISCONDUCT TO IMPEACH TRACY HILL AND ANDREW WADSWORTH WAS A VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ................... 22

   A.   THE ADMISSION OF MISS HILL'S PRIOR ACTS OF MISCONDUCT TO IMPEACH HER WAS A VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.......... 22

   B.   THE ADMISSION OF PETITIONER WADSWORTH'S PRIOR ACTS OF MISCONDUCT TO IMPEACH HIM WAS A VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION....................................................................... 23

CONCLUSION ....................................................................... 24

PETITION FOR WRIT OF HABEAS CORPUS

TABLE OF CASES

Page

Arrowhead v. Clusen, 732 F.2d 1364 (7th Cir. 1984). ........................................... 15

Chambers vs Mississippi 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed

    2d 297 (1973)................................................................................... 17, 20, 21

Chapman v. California, 386 U.S. 18 (1967)................................................. 13

In re Winship 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ................ 14, 16

Mullaney v. Wilbur (1975) 421 U.S.684..................................................... 14, 16

People v. Barton 12 Cal.4th 186 (1995) ..................................................... 12

People v. Breverman 19 Cal.4th 142 (1998) ..................................................... 13, 14

People v. Bridgehouse 47 Cal.2d 406 (1956) ........................................... 12

People v. Borchers 50 Cal, 2d 321 (1958)................................................ 13

People v. Ibarra 60 Cal.2d 460 (1963) ..................................................... 11

People v. Ledesma 43 Cal.3d 171 (1987)................................................. 11

People v. Pope 23 Cal.3d 412 (1979) ................................................... 10, 11

People v. Sedeno 10 Cal.3d 703 (1974) ................................................. 12, 15

People v. Stewart 16 Cal.3d 133 (1976 ................................................... 14

Sandstrom v. Montana 442 U.S. 510 99 S.Ct.

    2450, 61, L.Ed.2d 39 (1979) ..................................................... 15, 16

Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2053,

    80 L.Ed.2d 674 (1984)............................................................... passim

United States v. Gaudin 515 U.S. 506, 115 S.Ct. 2310,

    132 L.Ed.2d 444 (1995)............................................................. 14, 16

Woodard v. Sargent 806 F.2d 153 (8th Cir. 1986)................................... 15

# TABLE OF AUTHORITIES

Page

California Penal Code § 192(a) ............................................................ 13

U.S. Const., Fifth Amendment ..................................................... passim

U.S. Const., Sixth Amendment ..................................................... passim

U.S. Const., Fourteenth Amendment ............................................. passim

FREDERIC BAKER (SBN: 50055)
Attorney at Law
San Francisco Design Center
2 Henry Adams Street M71
San Francisco, CA 94103
Telephone: (415) 626-5133

**Attorney for Petitioner**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WADSWORTH,<br>        Petitioner, | ) No: _____<br>)<br>) |
| | ) PETITION AND MEMORANDUM<br>)  IN SUPPORT OF PETITION <u>FOR</u><br>) <u>WRIT OF HABEAS CORPUS</u> |
| MATTHEW C. KRAMER, WARDEN<br>AND THE ATTORNEY GENERAL<br>OF THE STATE OF CALIFORNIA<br>_____ | )<br>)<br>)<br>) |

       Petitioner Andrew Wadsworth, through his counsel, files this petition for writ of habeas

corpus.  By this verified petition petitioner alleges as follows:

                                        I.

       This case arises under the 5th, 6th, and 14th Amendments of the United States Constitution.

This court has jurisdiction to entertain this application for a writ of habeas corpus pursuant to rule

28 section 2254.

II.

Petitioner is unlawfully confined by the California Department of Corrections pursuant to a judgment of the Superior Court for Alameda County in <u>People v. Wadsworth</u> **C 142482.**

On February 8, 2002 petitioner Andrew Wadsworth was charged (after a remand from juvenile court) in complaint no. 473885 with the murder of Antonio Young on August 16, 2001 in violation of the Section 187A of California Penal Code. He was also charged with personally and intentionally discharging a firearm causing great bodily injury and death to Antonio Young within the meaning of Penal Code Sections 12022.53(c), 1222.53(d), 12022.5a1, 12022.5b, and 1203.075.

Petitioner pled not guilty and was tried by a jury.

On June 23, 2004, the jury found the petitioner Wadsworth guilty of murder in the first degree and further found that he personally and intentionally discharged a firearm which caused great bodily injury and the death of Antonio Young within the meaning of Penal Code Section 12022.53(d) and personal use of firearm within the meaning of Penal Code Section 12022.51(a)(1).

On September 14, 2004, the petitioner Wadsworth was sentenced to 50 years to life in prison.

III.

On October 15, 2004, petitioner Wadsworth filed notice of appeal.

Petitioner appealed his conviction to the Court of Appeal for the First Appellate District. On November 14, 2006 petitioner's conviction was affirmed by the Court of Appeal First Appellate District Division Two (A108087)

On December 15, 2006 petitioner Wadsworth filed a timely petition for review before this court: the Supreme Court of the State of California. On January 17, 2007 the petition for review was denied. (S148804)  On February 27, 2007 a petition for writ of habeas corpus was filed in the California Supreme Court.  The petition for a writ of habeas corpus was denied.

IV.

In his accompanying memorandum, petitioner raises the following challenges to the validity of his convictions:

V.

Petitioner Wadsworth was deprived of his right to be represented by competent counsel. Strickland v. Washington (1984) 466 U.S. 668.  However, information outside the record of appeal is presented to this court as the basis for this petition for writ of habeas corpus.  This information includes the declaration of petitioner Andrew Wadsworth that includes information that was not presented at the trial and is not part of the trial record or the record on appeal.

VI.

Petitioner's conviction and judgment is unlawful and unconstitutional in violation of his constitutional rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and parallel provisions of the California constitution.  The following facts now known to petitioner support this claim:  The petitioner's trial attorney was Brian Hong; Mr. Hong never asked the petitioner if he was enraged or in the heat of passion when he shot Antonio Young on August 16, 2001; the petitioner was enraged and acting in the heat of passion when he shot Antonio Young; the reason petitioner was enraged and acting in the heat of passion was that Antonio Young had displayed a firearm to petitioner, and had made an implied threat to me seconds before I shot him; petitioner's trial attorney, Brian Hong, never asked the petitioner  how he could locate any witnesses that Antonio Young had shot people on two occasions prior to August 16, 2001; Brian Hong made no effort to investigate whether Antonio Young had shot other persons prior to August 16, 2001.

-3-

The Petitioner also incorporates by reference the attached declaration by Petitioner Andrew Wadsworth.

VII.

Furthermore, the exclusion of Antonio Young's admissions that he had shot other persons was a violation of the petitioner Wadsworth's Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution, and a violation of the petitioner's right to Confront Witnesses against him and his right to Subpoena Witnesses under the Sixth Amendment to the United States Constitution.[1]

In <u>Chambers vs. Mississippi</u> 410 U.S. 284, 35 L.Ed 2d 297 93 S.Ct. 1038 (1973) the United States Supreme Court held that the exclusion of an admission against penal interest constituted a violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and violation of the Right to Confront Witnesses and Subpoena Witnesses under the Sixth Amendment to the United States Constitution. So under <u>Chambers</u> the exclusion of this statement against penal interest was a violation of the petitioner Wadsworth's constitutional rights.

VIII.

The defense attorney failed to investigate other witnesses who could have corroborated petitioner Wadsworth's testimony that Antonio Young had shot persons in the past. The Court of Appeals held that Antonio Young's out of court's statements were not admissible against interests because they were not reliable. But if the defense attorney had obtained other witnesses that Antonio Young had shot people in the past, the statements would have been reliable and admissible has statements against interests. The petitioner Wadsworth has executed a declaration

-4-

that the defense counsel never asked him if he knew of any witnesses that knew that Antonio Young shot other persons in the past. These witnesses together with the petitioner's testimony concerning Antonio Young's admission that Mr. Young had shot people in the past would have supported petitioner's testimony that Antonio Young displayed a firearm and threatened him at the time he shot him. Defense counsel never investigated this line of defense according to petitioner Wadsworth's declaration. Hence, this failure to investigate deprived petitioner of the effective assistance to counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the United States Supreme Court Case of <u>Strickland vs. Washington</u>. See <u>People vs. Juan Corona.</u> (1978).

IX.

The admission of prior acts of misconduct to impeach Tracy Hill and Andrew Wadsworth was a violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

X.

Petitioner's conviction and judgment is unlawful and unconstitutional in violation of his constitutional rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and parallel provisions of the California constitution. Petitioner incorporates by references the allegations of Paragraphs V, VI, VII, VIII and IX.. Petitioner was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel. To the extent the performance of either trial in any way limits consideration of this claim, petitioner has been substantially prejudiced.

---

[1] And the failure of his trial counsel to assert the admission of these statements for their truth was a violation of his Right to Counsel under the Sixth Amendment to the United States Constitution.

1    The Petitioner also incorporates by reference the attached declaration by petitioner Andrew

2   Wadsworth.

3                                      XI.

4    To the extent that the state challenges the allegations contained in support of petitioner's

5   claims raised herein, an evidentiary hearing will be required.

6

7    Petitioner has no plain, speedy, and adequate remedy at law to obtain his immediate

8   release.

9    WHEREFORE, petitioner respectfully requests that this Court:

10        1.  Issue its writ of habeas corpus or order to show cause to the Attorney General of

11            California to inquire into the lawfulness of petitioner's conviction;

12        2.  If needed, order that an evidentiary hearing be convened;

13        3.  After full consideration of this matter, set aside the conviction of petitioner;

14        4.  Grant petitioner whatever further relief is appropriate in the interest of justice.

15

16

17

18   DATED:    October 12, 2007

19

20                                              _____
                                                Fred Baker
21                                              Attorney for Petitioner

22

23

24

25

26

27

28

1  FREDERIC BAKER (SBN: 50055)
   Attorney at Law
2  San Francisco Design Center
3  2 Henry Adams Street M71
   San Francisco, CA 94103
4  Telephone: (415) 626-5133

5  **Attorney for Petitioner**

6

7                    IN THE UNITED STATES DISTRICT COURT

8                FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12  ANDREW WADSWORTH,                    )  No: _____
        Petitioner,                      )
13                                       )
14                                       )  MEMORANDUM IN SUPPORT
                                         )   OF PETITION <u>FOR</u>
15                                       )  <u>WRIT OF HABEAS CORPUS</u>
    MATTHEW C. KRAMER, WARDEN            )
16  AND THE ATTORNEY GENERAL             )
    OF THE STATE OF CALIFORNIA           )
17  _____     )
18

19

20                    **STATEMENT OF THE CASE**

21

22        On February 8, 2002 Andrew Wadsworth was charged (after a remand from juvenile court)

23  in complaint no. 473885 with the murder of Antonio Young on August 16, 2001 in violation of the

24  Section 187A of California Penal Code.  He was also charged with personally and intentionally

25

26

27

28

discharging a firearm causing great bodily injury and death to Antonio Young within the meaning of Penal Code Sections 12022.53(c), 1222.53(d), 12022.5a1, 12022.5b, and 1203.075.[1] (CT 1-2)

On February 22, 2002 and March 1, 2002 a preliminary hearing was held in Courtroom 109 of the Alameda County Superior Court. (CT 3-74). At the end of the preliminary hearing the defendant was held to answer on all of the charges and all of the special allegations. (CT 73)

On March 14, 2002 an information was filed charging petitioner Wadsworth with the murder of Antonio Young on August 16, 2001 in violation of the Section 187A of California Penal Code. He was also charged with personally and intentionally discharging a firearm causing great bodily injury and death to Antonio Young within the meaning of Penal Code Sections 12022.53(c), 1222.53(d), 12022.5a1, 12022.5b, and 1203.075. Petitioner Wadsworth was also charged with personal use of a firearm within the meaning of the Penal Code Sections 1203.06(a)(1). (CT 75-76)  On March 15, 2002 petitioner Wadsworth was arraigned on the information. (CT 78) On January 14, 2003 petitioner's case was assigned to Department 2 for a Marsden motion. At the conclusion of the Marsden hearing, the motion was denied. (CT 112-113)

On May 24, 2004, petitioner's case was assigned from department 11 to department 9 for jury trial. (CT 128-129)

On June 1, 2004, the defense filed a motion to exclude evidence of the petitioner's past conduct for impeachment. (CT 148-152)

On June 14, 2004, 12 jurors and 2 alternate jurors were sworn to hear the petitioner's case. And, on June 14, 2004, the jury trial commenced. (CT 159)

The jury trial continued through June 23, 2004. (CT 159-181)

---

[1] Defendant Andrew Wadsworth was also charged with possession for sale of cocaine in violation of Section 11351 of

-2-

# STATEMENT OF FACTS

The facts of the case show that petitioner Andrew Wadsworth shot and killed Antonio Young on August 16, 2001 in Oakland, California.  The facts in dispute are whether Antonio Young was carrying a firearm himself at the time he was shot and whether he displayed that firearm and threatened petitioner Wadsworth prior to any shots being fired.

# THE PROSECUTION'S CASE

**THE EVENING OF AUGUST 16, 2001**

**TYISHA DANCEY – ANTONIO'S GIRLFRIEND**

Tyisha Dancey was the last family member to see Antonio Young on the evening of the shooting. Ms. Dancey is the mother of Antonio's daughter. On August 16, 2001 Ms. Dancey saw Antonio talking with a person riding a bicycle on Clara Street. (RT 273-275).  At that time Antonio told Ms. Dancey that he would be home in 5 minutes.   Later that evening, Ms. Dancey received a call that Antonio had been shot.  (RT 276-278)

**BRENDA EASTERLING – 417 CLARA STREET**

Brenda Easterling was living at 417 Clara Street on August 16, 2001. Sometime that evening she responded to a knocking on her bathroom window.  She observed the petitioner Wadsworth outside her window at which time he told her "I shot and killed 'Tone'" (RT 456 line 10- 15; RT 457 lines 16- 18; RT 474 lines 6 -17)  According Ms. Easterling, she refused to let petitioner Wadsworth into her home. (RT 456 lines 25- 27)

the California Health and Safety Code on August 16, 2001 (CT 1-2).

**MEMORANDUM IN SUPPORT OF PETITION**
**FOR WRIT OF HABEAS CORPUS**

However, Ms. Easterling daughter Tracy opened the window and let petitioner Wadsworth into the house through the bathroom window.  After Mr. Wadsworth entered her home, he allegedly told Ms. Easterling that he had shot 'Tone'.

Later that evening Ms. Easterling allowed the police into her home to arrest Mr. Wadsworth.  (RT 463; RT 467; and RT 473)

**THE TESTIMONY OF THE POLICE WITNESSES**

Officer Gerardo Melaro was working on the crime reduction team of the Oakland Police Department on August 16, 2001.  At 10:45 pm on August 16, 2001 Officer Melaro heard several gunshots in the area of Clara Street and Rossmoor Court in Oakland. (RT 294-297) 10 to 15 seconds after hearing the gunshots Officer Melaro noticed a black male walking rapidly westbound on Rossmoor Court toward Clara Street. (RT 300-301; RT 315)  Officer Melaro later identified the petitioner Wadsworth as the person saw walking westbound towards Clara Street that evening. (RT 302)

Officer Melaro chased the subject on foot but eventually lost sight of him at 406 Jones Street.   (RT 302-309).  As Officer Melaro chased the subject, he notified dispatch that he was chasing a black male wearing a white shirt and white pants. (RT 306-309)

In response to Officer Melaro's broadcast, other officers set up a perimeter bounded by Ashton, Jones, Clara, and Edes Street. (RT 309-310)

At approximately 11:30 pm Officer Jason Anderson was admitted into a house at 417 Clara Street.  Officer Mork who had entered the house with Officer Anderson observed petitioner Andrew Wadsworth lying on a couch in a room behind the kitchen.  The officers detained Mr.

MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

Wadsworth and noticed a white t-shirt and white pants laying on the floor near the couch.  (RT 328; RT 335, lines 1-3)

At 12:40 am on August 17, 2001 Officer Melaro responded to 417 Clara and identified Andrew Wadsworth as the person he had seen earlier that evening running near Clara Street. Officer Melaro also identified the white shirt and pants as the clothing Mr. Wadsworth had been wearing earlier. (RT 311-315; RT 339-340)

Later that evening, Officer Anderson found a 38 caliber revolver in the back yard of 400 Jones Street. (RT 347-348)

Officer Henry Hunter and his partner Officer Chris Shannon found Antonio Young lying on the street in front of 50 Rossmoor Court at approximately 10:52 pm on August 16, 2001. Officer Hunter found an empty gun holster in Antonio's right front jacket pocket.[2]   The officers also noticed a woman standing near Antonio Young.[3] (RT 373-374; RT 363-368; RT 380; RT 384; RT 389-390; RT 398; RT 654-661)

**THE AUTOPSY OF ANTONIO YOUNG**

Dr. Thomas Payne, a forensic pathologist, performed an autopsy on Antonio Young on August 17, 2001.

Dr. Payne determined the cause of Antonio Young's death to be multiple gun shot wounds. (RT 242-243)  The gun shot wounds entered Antonio Young's body at the following positions: the right upper eyelid area (#1), the left forearm (#2), the right lower back (#3), the right lower

---

[2] No firearm or any other weapon was found on Antonio Young or on the street at Rossmoor Court on August 16 or August 17, 2001.

[3] The woman was later identified as Hattie Thomas, also known as Karen Wilson.

MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

back slightly below and to the side of gunshot wound #3 (#4), the outside of the right forearm (#5), and the inside of the right forearm (#6).

According to Dr. Payne, the gun was less then one or two feet from Antonio Young when the wound was inflicted.  Dr. Payne called the wound a loose contact gunshot wound (RT 247-248)

**THE POLICE TECHNICIAN – JULIE JAECKSCH**

At approximately 2:20 am on August 17, 2001, the police technician Julie Jaecksch arrived at the area of Clara and Jones Avenue in Oakland.  At the request of Officer Jason Anderson, Ms. Jaecksch observed a Rossi 38 caliber revolver at 400 Jones Avenue.  She noted that there were 5 fired bullet casings in the revolver. Mr. Jaecksch also recovered one bullet slug from the area of Rossmoor Court.  (RT 432-436; RT 441)[4]

**THE POLICE CRIMINALIST – LEE LANSING**

Mr. Lee Lansing was a crimininalist for the Oakland Police Department who examined and fired the 38 caliber Rossi revolver which had been recovered by the Oakland Police Department on August 17, 2001 (RT 433; RT 677) Mr. Lansing compared the bullets he test fired from the 38 caliber revolver with the 3 copper jacketed bullets that he were removed from Antonio Young's body on August 17, 2001.  (RT 244-246; RT 682-683)  Based on the class characteristics of the 3 bullets removed from Antonio Young's body, Mr. Lansing opined that they were fired by the revolver recovered from 400 Jones Street on August 17, 2001.  (RT 433; RT 436; RT 684-685)

**MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

**INTERVIEW OF ANDREW WADSWORTH BY SERGEANT JAMES RULLAMAS THE MORNING OF AUGUST 17, 2001**

Sergeant James Rullamas was the primary homicide investigator assigned to the death of Antonio Young. About 1:30 am on August 17, 2001, the Sergeant along with his partner Sergeant Nolan went to 50 Rossmoor Court to investigate the shooting of Antonio Young. After reviewing the police report Sergeant Rullamas and Nolan contacted Mr. Wadsworth and read him his Miranda Rights. According Sergeant Rullamas, Mr. Wadsworth stated that he understood his Miranda Rights and waived them. (RT 479-489)

Initially, Sergeant Rullamas did not activate the tape recorder. In fact, Sergeant Rullamas spoke with Mr. Wadsworth for approximately 55 minutes before turning on the tape recorder. (RT 603-604; RT 610)

Initially, Mr. Wadsworth denied shooting Mr. Young later he said that he had shot Antonio in the head and in the back in self-defense (RT 606; RT 617) Andrew Wadsworth that he had told the Sergeants that he had met Antonio Young at the Flatland Store on Edith Street. Andrew and Antonio walked together on Rossmoor Court. (RT 608)

Mr. Wadsworth said that when he met Antonio at the store, he told Andrew that he was "dirty." Mr. Wadsworth understood this statement to mean that Antonio had a firearm in his possession. (RT 618, lines 6-9, lines 21-26; RT 647-648)

When Antonio and Andrew reached Rossmoor Court Andrew became afraid that Antonio would try to shoot him. Mr. Wadsworth claimed that Antonio had put his hand in his pocket and

---

[4] Also, Ms. Jaecksch recovered a live 9 millimeter round from inside 417 Clara Street. She also found 11 38 caliber bullets in a desk drawer in the bedroom. (RT 421-423; RT 425)

**MEMORANDUM IN SUPPORT OF PETITION**
**FOR WRIT OF HABEAS CORPUS**

1  pulled out a gun.  So, he shot Antonio in the face and then in the back.  (RT 608-609; RT 614-

2  615[5])

3

4        Sergeant Rullamas also testified that when the police arrived and found Antonio Young

5  lying on the street, they searched his clothing and the area around him.  But they never found any

6  firearm on Antonio nor did they discover any firearm that evening that fit in the holster. (RT 625,

7  lines 11-27)

8                                    **THE DEFENSE CASE**

9

10 **TRACY HILL**

11

12       Tracy Hill lived in the Brookfield area of Oakland for most of her life.   She testified that

13 she would see Antonio Young daily at the Flatland Store on Edith Street.  Miss Hill testified that

14 she had seen Antonio Young carrying a firearm on his right side in his waistband on a few

15 occasions (RT 708; RT 712) Miss Hill also had seen Mr. Young with a firearm contained in a "big

16 holster." (RT 713)

17

18

19 **PETITIONER ANDREW WADSWORTH, JR.**

20       Andrew Wadsworth lived with his grandparents on 617 Clara Street in the Brookfield area

21 of Oakland.  His residence was near the intersection of 98th and Edith Streets.

22       Andrew testified that there were a lot of rivalries and shootings in the neighborhood. (RT

23 717-718; RT 728)  According to Andrew in August of 2001 his Uncle Michael Wadsworth (who

24 had recently been released from prison) had taken over the drug trade in the Brookfield area of

25 Oakland.  Michael Wadsworth had a reputation in the neighborhood as a killer.  (RT 730-731; RT

26

27 _____

28 [5] Sergeant Rullamas testified that before they went on tape, Andrew Wadsworth testified that Antonio Young never
   pulled out his gun until he was lying on the ground bleeding. (RT 609-610; RT 618-19)  But, the tape which was

**MEMORANDUM IN SUPPORT OF PETITION**
**FOR WRIT OF HABEAS CORPUS**

735, lines 22-28; RT 753)   In the days preceding the evening of August 16, 2001 Michael

Wadsworth was involved in a number of shootings in the neighborhood and had himself shot been

shot two or three days prior to August 16, 2001.  (RT 731 lines 5-7; RT 753 lines 1-3;  RT 756

lines 20-26; RT 760 lines 23-26)[6]

According to petitioner Wadsworth, as of August 16, 2001 the Brookfield area was

tantamount to war zone.  And, his uncle Michael Wadsworth had been shot tow or three days

earlier.  So when Andrew left his grandparents house that evening he carried a .38 caliber Rossi

special revolver which he had purchased a week and a half earlier. (RT 755, lines 23-28; RT 756,

lines 1-26; RT 757, lines 14-23; RT 759, lines 8-13)

Andrew rode his bicycle to the Flatlands Store and encountered his childhood friend

Antonio Young.  Andrew rode his bike alongside Antonio as they walked to the area of Rossmoor

Court.  When they arrived at Rossmoor Court Antonio said to Andrew "I heard your Uncle was

out to kill me." (RT 734, lines 8-11; RT 735, lines 3-11) As Antonio made this ominous statement,

he pulled out a handgun from his clothing.  (RT 734, lines 12-28; RT 735, lines 1-2; RT 739, lines

1-13; RT 744, lines 2-7)

Approximately a year and a half prior to August 16, 2001, Antonio Young had threatened

Andrew with a handgun.  At the time, of that earlier threat Antonio had told Andrew that a person

from Clara Street had shot at him.  Antonio further said that he didn't trust Andrew because he

hung out with the people from Clara Street. (RT 739, lines 18-28; RT 740; RT 741, lines 1-10)

Furthermore, prior to the evening August 16, 2001, Mr. Young had told Andrew that on two

admitted into evidence contained no such statement.
[6] In August of 2001 Michael Wadsworth was living with a woman named "Hattie Thomas" who was also called
"Karen Wilson." (RT 753)

MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

separate occasions he had shot people.  On one of the occasions he told Andrew that he "blew the back of someone's head off."  (RT 741-742)

Based on the fact that Antonio had threatened him in the past, had admitted to shooting people in the past and had unexpectedly said "I heard that your Uncle was out to kill me" as he pulled a firearm from his jacket, Andrew withdrew his own firearm and shot Antonio several times.  (RT 741-742)

## THE PETITIONER'S ARGUMENTS

### I.

**PETITIONER WAS DENIED HIS RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND IT IS REASONABLY PROBABLE THAT A DIFFERENT OUTCOME WOULD HAVE OCCURRED UNDER <u>STRICKLAND V. WASHINGTON</u>; THE DECISION OF THE COURT OF APPEAL OF THE STATE OF CALIFORNIA WAS AN UNREASONABLE APPLICATION OF <u>STRICKLAND V. WASHINGTON.</u>**

## INTRODUCTION

Both the federal and state constitutions give a criminal defendant the right to the effective assistance of counsel.  U.S. Const., 6th Amend.; Cal. Const., Art. I, section 15; <u>Strickland v. Washington</u>, 466 U.S. 668, 686 104 S.Ct. 2053, 80 L.Ed.2d 674(1984); <u>People v. Soriano</u>, 194 Cal.App.3d 1470, 1478 (1987).  "Effective counsel" means a "'reasonable competent'" attorney who acts as a "diligent conscientious advocate."  <u>People v. Pope</u>, 23 Cal.3d 412, 423 (1979).  "Under this standard a defendant may reasonably expect that before counsel undertakes to act at all he will make a rational and informed decision on strategy and tactics founded on adequate

-10-

investigation and preparation."  People v. Soriano, supra, at 1479, quoting People v. Ledesma, 43 Cal.3d 171, 215 (1987).

The petitioner Andrew Wadsworth has executed a declaration that states that he was enraged at the time he shot Antonio Young and that his trial attorney failed to ask him if he was enraged or acting in the head of passion.  Therefore, trial counsel failed to adequately investigate the defense of heat of passion voluntary manslaughter.  Thus, under Strickland v. Washington the petitioner was deprived of his Right to Counsel under the Sixth Amendment and Fourteenth Amendment.

Andrew Wadsworth was entitled to the assistance of trial counsel acting as a diligent advocate in a manner to be expected of a reasonably competent attorney.  People v. Pope, 23 Cal.3d 412, 425 (1979).  Mr. Wadsworth did not receive the effective assistance of counsel, and his conviction and sentence were obtained in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, sections 1, 7, 13, 15, 16 and 17 of the California Constitution, because his trial counsel failed to provide him with the reasonably competent assistance of an attorney acting as a diligent and conscientious advocate.

Trial counsel's representation of petitioner fell well below an objective standard of reasonableness under prevailing professional norms, and there is a reasonable probability that absent the errors, the fact-finder would have had a reasonable doubt as to petitioner's guilt.  Strickland v. Washington, supra, 466 U.S.  at 688.  Trial counsel's conduct resulted in the withdrawal of a crucial defense (People v. Martinez, 14 Cal.3d 533, 538 (1975); People v. Ibarra, 60 Cal.2d 460, 464 (1963), so Mr. Wadsworth's conviction must therefore be reversed.

**MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS**

**The Trial Counsel Failed to Request Appropriate Jury Instructions.**

Trial counsel was ineffective by not requesting heat of passion manslaughter instructions despite there being substantial evidence of sufficient provocation in the case. Mr. Wadsworth was entitled to a jury trial on the issue of provocation, and trial counsel's failure to seek proper jury instructions as to heat of passion manslaughter denied petitioner this right.

The facts clearly established provocation and passion. The jury could have found that a reasonable person in petitioner's position, faced with an attack of this nature, would have been overcome by fear, terror, and passion, and acted out of such emotions, rashly, without deliberation or reflection, to repel the attackers. Despite all of these mitigating facts, defense counsel failed to request a manslaughter jury instruction. People v. Sedeno 10 Cal.3d 703 (1974).

Further more, a simple review of California case law would have demonstrated to defense counsel that the provocation in this case was more than sufficient to sustain a verdict of heat of passion manslaughter. The case law regarding provocation was summarized in People v. Barton, 12 Cal.4th 186 (1995), where the provocation held to justify heat of passion manslaughter instructions consisted of a report by the defendant's daughter that the decedent tried to run her car off the road and spat on her window, which caused the defendant to confront the decedent. During the confrontation, the decedent called the daughter a "bitch" and acted as if he were "berserk." The decedent challenged the defendant to fight, but got in his car after the defendant asked his daughter to call the police. From the car he taunted the defendant, who ordered him out of the car, threatened to shoot, and finally shot. The conduct by the decedent at issue in Barton consisted mainly of words and the assumption of a "fighting stance." In contrast, Antonio Young used far more than mere words and fighting stances. See also, e.g., People v. Bridgehouse, 47 Cal.2d 406, 414 (1956) (adequate provocation where the defendant's wife was living with the decedent and

-12-

upon visiting his wife's mother, saw the decedent and shot him.); <u>People v. Borchers</u>, 50 Cal.2d 321, 328 (1958) (defendant roused to heat of passion by his girlfriend's admitted infidelity, her statement that she wished she were dead, her attempt to jump from a car, her repeated urging that the defendant shoot her, and her taunting him as being "chicken.")   See <u>People v. Breverman</u> (1998) 19 Cal.4th 142, 149, 165-169.

In this case the trial counsel was ineffective for failing to request the trial court to instruct the jury that if Mr. Wadsworth fired the fatal shot in the heat of passion caused by the unprovoked, violent, life-endangering attack by Antonio Young, he was guilty of manslaughter not murder. The trial record demonstrates beyond a reasonable doubt that it was trial counsel's failure to seek jury instructions on heat of passion manslaughter that caused the verdict of second degree murder, and that a properly instructed jury would have returned a verdict of heat of passion manslaughter. <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).  California Penal Code § 192(a).

The petitioner Andrew Wadsworth has executed a declaration that states that he was enraged at the time he shot Antonio Young and that his trial attorney failed to ask him if he was enraged or acting in the head of passion.  Therefore, trial counsel failed to adequately investigate the defense of heat of passion voluntary manslaughter.  Thus, under <u>Strickland v. Washington</u> the petitioner was deprived of his Right to Counsel under the Sixth Amendment and Fourteenth Amendment.

Because there was substantial evidence of provocation, it cannot be reasonably said that the jury would have rejected the provocation testimony in favor of the prosecution's theory.

Furthermore, the fact-finder's rejection of the self-defense claim in this case does <u>not</u> establish that it would have also rejected a claim of provocation.  The jury was instructed that the right of self-defense exists only as long as the real or apparent threatened danger continues to exist

-13-

1    and that when such danger ceases to exist the right to use force is self-defense ends.  CALJIC 5.52

2

3    (CT 119.)  The prosecutor's argument to the jury emphasized the requirement of imminent danger

4    – in fact, the prosecutor argued that if Mr. Wadsworth had stopped shooting Mr. Young after the

5    first shot his self-defense claim would have been valid.  <u>United States v. Gaudin</u> 515 U.S. 506,

6    115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

7         On the basis of the evidence presented at trial, the jury may well have concluded that Mr.

8    Wadsworth, provoked by the attack on his residence, was justified in using deadly force when he

9

10   fired the first shot at Antonio Young, but his continued shooting was unjustifiable.

11         This state of facts, although defeating a claim of self-defense, would not defeat a claim of

12   provocation.  <u>See</u> <u>People v. St. Martin</u>, 1 Cal. 3d at 532; <u>See</u> <u>People v. Breverman</u> (1998) 19

13   Cal.4th 142, 149, 165-16.

14         The effect of the court's instructions and the failure to instruct on heat of passion

15   manslaughter lessened the burden of proof on the prosecution.  The finder of fact may well have

16
     found that the petitioner acted with provocation and killed Mr. Young during the heat of passion.
17
     The failure to properly instruct the jury and give the jury the opportunity to find that the petitioner
18
19   committed a voluntary manslaughter in the heat of passion was a violation of the due process

20   clause of the Fifth and Fourteenth Amendments to the United States Constitution.  <u>In re Winship</u>

21   397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  <u>United States v. Gaudin</u> 515 U.S. 506, 115

22
     S.Ct. 2310, 132 L.Ed.2d 444 (1995).  Furthermore, an intentional killing done without malice is
23
24   voluntary manslaughter and not murder <u>Mullaney v. Wilbur</u> (1975) 421 U.S.684.

25         Although the duty to instruct the jury on the law as it applies to the case is, of course, a non-

26   delegable responsibility of the trial court (<u>People v. Stewart</u>, 16 Cal.3d 140), trial counsel in this

27   case utterly failed in his responsibility to his client to propose relevant jury instructions.  <u>In re</u>

28

**MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS**

Cordero, 46 Cal.3d 161, 189 (1988)(counsel has a duty to carefully prepare and request all instructions which in his judgment are necessary to explain all legal theories upon which the defense rests.) Sandstrom v. Montana 442 U.S. 510 99 S.Ct. 2450, 61, L.Ed.2d 39 (1979)

In this case, defense counsel should have requested the court to instruct the heat of passion manslaughter as a lesser included offense of murder. CALJIC 8.40. And defense counsel should have also requested that the trial court instruct the jury pursuant to CALJIC 8.42 – Sudden Quarrel or Heat of Passion and Provocation Explained, CALJIC 8.43 – Murder or Manslaughter – Cooling Period, and CALJIC 8.44 – No Specific Emotion Alone Constitutes Heat of Passion. People v. Sedeno 10 Cal.3d 703 (1974).

This failure to request appropriate jury instructions constituted ineffective assistance of counsel by which the petitioner was prejudiced.  Id.; See also Woodard v. Sargent, 806 F.2d 153, 157 (8th Cir. 1986); Arrowhead v. Clusen, 732 F.2d 1364, 1371-72 (7th Cir. 1984).

Trial counsel also had a duty to make a record of the instructional proceedings sufficient to allow meaningful appellate review of this portion of the trial.  See Margolin, Preservation of the Record on Appeal, Vol.21, No.1, California Attorneys for Criminal Justice Forum, pp. 68-69.  In this respect as well, counsel's performance fell far below prevailing professional norms and resulted in the withdrawal of a crucial defense to the charge of second degree murder.

Petitioner was severely prejudiced by counsel's ineffectiveness in that, on the facts of this case, it is reasonably probable that had trial counsel performed his duty to his client as to the heat of passion manslaughter defense, a result more favorable to the petitioner would have been reached.  Strickland v. Washington, supra.

The Court of Appeal of the State of California concluded that there was no evidence that the petitioner was in fact acting in the heat of passion when he shot Antonio Young.  However, the

petitioner has executed a declaration that he was enraged when he shot Antonio Young.  And he further has declared that his trial counsel never asked him whether he was acting in the heat of passion when he killed Antonio Young.  Therefore, since his trial counsel never developed the information concerning the heat of passion nor requested that the jury be instructed as to heat of passion manslaughter, the petitioner was deprived of his right to due process under the Fifth and Fourteenth amendments to the United States Constitution and the right to counsel under the Sixth and Fourteenth amendments to the United States Constitution.

Thus, Mr. Hong's failure to investigate prejudiced the petitioner.  And, it is reasonably probable that a different result would have occurred if there had been proper investigation. Hence the Court of Appeal decision was an unreasonable application of a clear United States Supreme Court decision: Strickland v. Washington (1984) 466 U.S. 668.

And the failure to give the jury the opportunity to consider heat of passion manslaughter lessened the prosecution's burden and was a deprivation of due process and a clear misapplication of the following United States Supreme Court cases: In re Winship 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Mullaney v. Wilbur (1975) 421 U.S.684; Sandstrom v. Montana 442 U.S. 510 99 S.Ct. 2450, 61, L.Ed.2d 39 (1979); United States v. Gaudin 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

Furthermore, the California Court of Appeal failed to follow the established California Supreme Court Authority on heat of passion homicide, implied malice, and reasonable doubt. This was also a misapplication of the clear authority of the following United States Supreme Court cases: In re Winship 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Mullaney v. Wilbur (1975) 421 U.S.684; Sandstrom v. Montana 442 U.S. 510 99 S.Ct. 2450, 61, L.Ed.2d 39 (1979); United States v. Gaudin 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

-16-

## II.

**THE LIMITATION OF ANTONIO YOUNG'S STATEMENT THAT HE HAD SHOT PEOPLE ON TWO DIFFERENT OCCASIONS IN THE PAST DO NOT PROVE THE TRUTH OF THE STATEMENTS WAS A VIOLATION OF THE PETITIONER 'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND HIS RIGHT TO PRODUCE WITNESSES UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION; THE TESTIMONY WAS ADMISSABLE UNDER THE UNITED STATES SUPREME COURT CASE OF <u>CHAMBERS V. MISSISSIPPI</u>; FURTHERMORE, HIS TRIAL COUNSEL'S CONCESSION TO THE TRIAL COURT'S LIMITING INSTRUCTION WAS A VIOLATION OF THE PETITIONER RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

## INTRODUCTION

During the direct examination of the petitioner Wadsworth by his trial attorney the following testimony was elicited.

Q. Did he ever tell you anything that led you to believe that he was capable of using a gun against you?

A. Oh, yeah, he did.

Q. What?

A. He told me a couple times when he had to do what he was going to do, he said one time he was going to Havens Court, it is a street on 67th, and he said it was him and somebody was going to look for somebody and they had like a little shootout over there.

Q. Did he tell you whether or not he shot anybody?

A. Yeh; he told me another altercation where him and – no, he didn't tell me nobody was with him, but he said he busted somebody in the back of the head with a gun.

-17-

1    Ms. Panetta: I missed that.

2    The Witness:     Basically blew somebody head off.  That is what he said.  In

3        the back of the head.

4    Mr. Hong:   Q.   So he told you of two instances where he supposedly shot

5        somebody?

6    A.  Yes, sir.

7    Q.  Did he tell you about these two incidences on the same occasion or different

8        occasions?

9    A.  Different occasions.

10   Q.  An you recall with regard to the shooting on Havens Court, do you remember

11       when he told you that in relationship to the shooting on August 16th, 2001?

12   A.  I can't recall because it was awhile back before that.

13   Q.  What about the other shooting that he told you about where he blew

14       somebody's head off; do you recall when he told you that in relationship to

15       this August 16th, 2001?

16   A.  No, sir, because that was awhile too. (RT 741 lines 10-18; RT 742 lines 1-15)

17

18       Then the following discussion took place between the trial court and defense

19   counsel:

20       The Court:  I assume these questions are eliciting information not for the

21       truth of what is being said, but the mere fact they were being said for a non

22       hearsay purpose.

23       Mr. Hong:  Yes, your honor.

24       The Court:  Or exception to hearsay.

25       Mr. Hong:  Thank you (RT 742 lines 16-22)

26

27       Then the trial court gave the following admonition to the jury:

28

-18-

The Court: Ladies and Gentlemen, just so you understand. Certain information is being elicited from this witness about what the victim in this matter said. It is not being offered to prove the truth of what the victim allegedly said, but merely the statements were made and this information was imparted to this witness. (RT 742 lines 23-28)

The testimony about Antonio Young's admission that he possessed a gun in the past and shot people on two occasions was highly probative and was admissible to prove that Antonio Young had acted in a similar manner on past occasions. His prior conduct was relevant to prove that he possessed a firearm on Rossmoor Court on August 16, 2001. The fact that Antonio Young had shot people in the past proved that he had produced a firearm prior to being shot but petitioner Wadsworth on August 16, 2001.

The exclusion of this testimony was a violation of petitioner Wadsworth's Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution and his right to produce witnesses under the Sixth Amendment to the United States Constitution.

And his trial counsel's agreement with the court (in front of the jury) that the testimony was not admissible for the truth deprived the petitioner of his right to counsel under the Sixth Amendment to the United States Constitution.

## A.

## ANTONIO YOUNG'S STATEMENT TO PETITIONER WADSWORTH WAS ADMISSIBLE AS AN EXCEPTION TO THE HEARSAY RULE FOR DECLARATIONS AGAINST PENAL INTEREST

Antonio Young admitted to Andrew Wadsworth that he shot people on two occasions in the past. On one of these occasions, Antonio said that he "blew out the back of someone's head."

MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

These statements (when uttered by Antonio) subjected Antonio to civil and criminal liability.  So they were declarations against interest as set forth in § 1230 of the California Evidence Code.

Antonio was obviously unavailable as a witness at trial.  So the statements were admissible under § 1230 of the California Evidence Code for the truth of the statements.

## B.

**THE EXCLUSION OF THE STATEMENTS DEPRIVED THE PETITIONER OF HIS RIGHT TO SUPUENA WITNESSES, PRESENT A DEFENSE, AND A FAIR TRAIL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES AND HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.**

The exclusion of Antonio Young's admissions that he had shot other persons was a violation of the petitioner Wadsworth's Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution, and a violation of the petitioner's right to Confront Witnesses against him and his right to Subpoena Witnesses under the Sixth Amendment to the United States Constitution.[7]

In <u>Chambers vs. Mississippi</u> 410 U.S. 284, 35 L.Ed 2d 297 93 S.Ct. 1038 (1973) the United States Supreme Court held that the exclusion of an admission against penal interest constituted a violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and violation of the Right to Confront Witnesses and Subpoena Witnesses under the Sixth Amendment to the United States Constitution.  So under <u>Chambers</u> the exclusion of this statement against penal interest was a violation of the petitioner Wadsworth's

---

[7] And the failure of his trial counsel to assert the admission of these statements for their truth was a violation of his Right to Counsel under the Sixth Amendment to the United States Constitution.

**MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

constitutional rights.  Therefore, the decision of the California State Court of Appeal was a misapplication of the clear United States Supreme Court case of <u>Chambers vs. Mississippi.</u>

The defense attorney failed to investigate other witnesses who could have corroborated petitioner Wadsworth's testimony that Antonio Young had shot persons in the past.  The Court of Appeals held that Antonio Young's out of court's statements were not admissible against interests because they were not reliable. But if the defense attorney had obtained other witnesses that Antonio Young had shot people in the past, the statements would have been reliable and admissible has statements against interests. The petitioner Wadsworth has executed a declaration that the defense counsel never asked him if he knew of any witnesses that knew that Antonio Young shot other persons in the past.  These witnesses together with the petitioner's testimony concerning Antonio Young's admission that Mr. Young had shot people in the past would have supported petitioner's testimony that Antonio Young displayed a firearm and threatened him at the time he shot him.  Defense counsel never investigated this line of defense according to petitioner Wadsworth's declaration. Hence, this failure to investigate deprived petitioner of the effective assistance to counsel guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the United States Supreme Court Case of <u>Strickland vs. Washington</u>.

Therefore, the decision of the Court of Appeal was a misapplication of the clear United States Supreme Court Case of <u>Strickland vs. Washington</u> and an unreasonable application of the clear United States Supreme Court Case of <u>Chambers v. Mississippi</u>.

**MEMORANDUM IN SUPPORT OF PETITION**
**FOR WRIT OF HABEAS CORPUS**

1

## III.

THE ADMISSION OF PRIOR ACTS OF MISCONDUCT TO IMPEACH TRACY HILL

AND ANDREW WADSWORTH WAS A VIOLATION OF THE DUE PROCESS

CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION


## INTRODUCTION


Over the objections of the Defense Counsel the trial court permitted the prosecution to

impeach the defense witness Tracy Hill with three acts of misconduct.  The first was that she

assaulted a police officer on May 8, 2003.  The second was that she committed a theft at Macy's at

February 9, 2003.  The third was that she committed another theft in an act of vandalism on

November 14, 1998.  The trial court held that under Section 352 of the California Evidence Code

the probative value of the evidence on the credibility of the witness outweighed any possible

prejudice.  Hence the court allowed the prosecution to use these prior acts of misconduct for

impeachment. (RT 698-700; RT 702-703)

The trial court also held over the objections of defense counsel that Andrew Wadsworth

prior misconduct in possessing drugs with the intent to sell and brandishing a firearm were

admissible to impeach him.  (RT 698-703; RT 716)


## A

THE ADMISSION OF MISS HILL'S PRIOR ACTS OF MISCONDUCT TO IMPEACH

HER WAS A VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND

FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

Ms Hill was a critical witness for Mr. Wadsworth's defense. She testified that she had known Antonio Young for five or six years. She would often see Mr. Young standing near the Flatland Store at 98th and Edes Streets in Oakland. (RT 706-707) Ms. Hill testified that she had seen Antonio Young with a firearm on four or five occasions. He would either be carrying the firearm on his right side in his waistband or in a holster on his leg. The court's ruling allowed highly prejudicial evidence with little probative value to be heard by the jury. The court's ruling allowed the jury to hear that she had been arrested and convicted of prostitution as well as other offences. (RT 709)

The introduction of this testimony and the resulting prejudice was a violation of petitioner Wadsworth's Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution.

## B

**THE ADMISSION OF PETITIONER WADSWORTH'S PRIOR ACTS OF MISCONDUCT TO IMPEACH HIM WAS A VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

The court's ruling allowed the prosecutor to introduce non-probative testimony that Mr. Wadsworth sold drugs for a living and that he had been found with 13 bags of marijuana in the past. (RT 745-747)

The ruling also allowed the prosecutor to cross-examine the petitioner concerning an incident which allegedly involved brandishing a firearm. On July 4, 1999 the petitioner had an altercation with a store clerk at the Flatland Store. Mr. Wadsworth was only 14 at the time of the

MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

incident.  The prosecutor was allowed to cross-examine him concerning this incident and assert that Mr. Wadsworth had a firearm on an earlier occasion.  (RT 748-750)

The introduction of all this testimony was a violation of the petitioner's Due Process Rights under the Fifth and Fourteenth Amendments of the United States Constitution.


CONCLUSION

For the reasons stated above the Petition for Writ of Habeas should be granted.


DATED:  October 12, 2007

Respectfully submitted,


By:_____
    Fred Baker, Attorney for Petitioner

**MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS**

**DECLARATION OF PETITIONER ANDREW WADSWORTH**

I am the Petitioner on Habeas Corpus.

1.  My trial attorney was Brian Hong.

2.  Mr. Hong never asked me if I was enraged or in the heat of passion when I shot Antonio Young on August 16, 2001.

3.  I was enraged and acting in the heat of passion when I shot Antonio Young.

4.  The reason I was enraged and acting in the heat of passion was that Antonio Young had displayed a firearm to me, and had made an implied threat to me seconds before I shot him.

5.  My trial attorney, Brian Hong, never asked me how he could locate any witnesses that Antonio Young had shot people on two occasions prior to August 16, 2001.

6.  As far as I know Brian Hong made no effort to investigate whether Antonio Young had shot other persons prior to August 16, 2001.

Executed under penalty of perjury this ____ day of _____, 2007 at Represa, California.

_____
ANDREW WADSWORTH
PETITIONER

**VERIFICATION OF PETITIONER ANDREW WADSWORTH**

I am the Petitioner on Habeas Corpus.

I have read the foregoing Petition for a Writ of Habeas Corpus and the Memorandum in support thereof.  I believe the matters are accurate.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____, 2007 at Folsom State Prison, Represa, California.


_____

ANDREW WADSWORTH