IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WADSWORTH, | ) No: C 07-5241 MMC |
| | ) |
| Petitioner, | ) |
| | ) |
| MATTHEW C. KRAMER, Warden, and the | ) |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF CALIFORNIA | ) |
| | ) |
| Respondents | ) |
| | ) |
| _____ | ) |

PETITIONER'S REPLY BRIEF

FREDERIC BAKER (SBN: 50055)
Attorney at Law
San Francisco Design Center
2 Henry Adams, Suite M 71
San Francisco, CA 94103
(415) 626-5133
Attorney for Petitioner Andrew Wadsworth

TABLE OF CONTENTS

Page

I.    LEGAL STANDARD OF REVIEW ...............................................................1

II.   THERE WAS NO INCONSISTENCY BETWEEN A THEORY
      THAT THE PETITIONER WADSWORTH ACTED IN THE
      HEAT OF PASSION AND THE THEORY THAT HE ACTED
      IN AN UNREASONABLE BELIEF THAT HE WAS JUSTIFIED
      IN ACTING IN SELF DEFENSE TO REDUCE THE OFFENSE
      FROM MURDER TO THE LESSER CRIME OF VOLUNTARY
      MANSLAUGHTER ..........................................................................................3

III.  DEFENSE COUNSEL FAILED TO INVESTIGATE WHETHER
      THE PETITIONER WADSWORTH WAS ENRAGED AND
      ACTING IN THE HEAT OF PASSION AT THE TIME OF THE
      SHOOTING; TRIAL COUNSEL'S PERFORMANCE FELL
      BELOW THE OBJECTIVE STANDARDS OF REASONABLENESS
      UNDER THE PREVAILING PROFESSIONAL NORM ...............................5

IV.   DEFENSE COUNSEL FAILED TO REQUEST A JURY
      INSTRUCTION ON THE THEORY THAT PETITIONER
      WADSWORTH ACTED IN THE HEAT OF PASSION AND
      COULD HAVE BEEN FOUND GUILTY OF A LESSER
      INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER
      ON THAT THEORY; TRIAL COUNSEL'S PERFORMANCE
      FELL BELOW THE OBJECTIVE STANDARDS OF
      REASONABLENESS UNDER THE PREVAILING
      PROFESSIONAL NORM..................................................................................7

V.    THE STATEMENTS OF ANTONIO YOUNG THAT HE HAD SHOT
      PERSONS ON TWO OCCASIONS IN THE PAST WERE RELEVANT
      TO ESTABLISH THE OBJECTIVE CIRCUMSTANCES THAT
      JUSTIFY A HEAT OF PASSION INSTRUCTION ......................................12

VI.   DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO
      INVESTIGATE WHETHER ANTONIO YOUNG HAD IN FACT
      SHOT PERSONS ON TWO PRIOR OCCASIONS........................................14

VII.  THE LIMITATION OF THE STATEMENT OF ANTONIO YOUNG
      THAT HE SHOT PERSONS ON TWO PRIOR OCCASIONS FOR A
      NON-HEARSAY PURPOSE WAS A VIOLATION OF THE
      PETITIONER'S RIGHT "TO HAVE COMPULSORY PROCESS FOR
      OBTAINING WITNESSES IN HIS FAVOR" AS SET
      FORTH IN THE SIXTH AMENDMENT .......................................................15

IIX.    THE ADMISSION OF PRIOR MISCONDUCT OF THE
        PETITIONER WADSWORTH AND THE WITNESS
        TRACY HILL WERE VIOLATIONS OF HIS RIGHT
        TO DUE PROCESS .........................................................................................16

IX.     UNDER THE AEDPA STANDARD OF REVIEW TRIAL
        COUNSEL'S PERFORMANCE WAS INADEQUATE AND
        THERE WAS A PROBABILITY OF A DIFFERENT RESULT
        SUFFICIENT TO UNDERMINE CONFIDENCE IN THE
        OUTCOME; THE STATE COURT'S APPLICATION OF
        STRICKLAND V. WASHINGTON WAS CLEARLY
        ERRONEOUS ................................................................................................17

        A.  TRIAL COUNSEL'S FAILURE TO INVESTIGATE
            THE THEORY THAT THE PETITIONER ACTED IN
            THE HEAT OF PASSION .........................................................................17

        B.  TRIAL COUNSEL'S FAILURE TO INVESTIGATE THE
            INFORMATION THAT ANTONIO YOUNG HAD SHOT
            PERSONS ON TWO OTHER OCCASIONS.............................................20

        C.  THE TRIAL ATTORNEY'S FAILURE TO REQUEST THE
            HEAT OF PASSION INSTRUCTIONS FOR VOLUNTARY
            MANSLAUGHTER ..................................................................................20

X.      TRIAL COUNSEL'S FAILURE TO REQUEST INSTRUCTIONS AS
        TO HEAT OF PASSION MANSLAUGHTER WAS ALSO A
        VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS UNDER
        THE FOURTEENTH AMENDMENT; THE CALIFORNIA COURTS'
        AFFIRMANCE DESPITE THE DUE PROCESS VIOLATION
        CONSTITUTED AN UNREASONABLE APPLICATION OF
        CLEARLY ESTABLISHED FEDERAL LAW.............................................22

XI.     THE CUMULATIVE EFFECT OF THE EVIDENTIARY ERRORS
        MADE DURING THE TRIAL VIOLATED THE PETITIONER'S DUE
        PROCESS RIGHTS; THE STATE COURT'S FAILURE TO GRANT
        RELIEF WAS AN OBJECTIVELY UNREASONABLE APPLICATION
        OF CLEARLY ESTABLISHED FEDERAL LAW AND THUS
        WARRANTS FEDERAL HABEAS CORPUS RELIEF ...............................23


CONCLUSION TO THE REPLY BRIEF..................................................................24

# TABLE OF AUTHORITIES

<u>Page</u>

<u>Barker v. Yukins</u>, 199 F.3d 867 (6th Cir. 1999)...............................................................23

<u>Bradley v Duncan</u> 315 F.3d 1091 (9th Cir. 2002) ....................................................22, 23

<u>Chambers v. Mississippi</u>, 410 U.S. 284, 93, S.Ct. 1038, 35
     L.Ed.2d 297 (1973)........................................................................................... Passim

<u>Clark v. Brown</u> 450 F.3d. 898 (9th Cir. 2006)..............................................................22

<u>Delgado v. Lewis</u> 223 Fed 3d. 976 (9th Circuit 2000). ....................................................2

<u>Hawkins v. United States,</u> 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1954) ...............24

<u>Jennings v. Woodford</u> 290 F.3d 1006 (9th Cir. 2002) ..................................... 6, 15, 18-20

<u>Krulewitch v. United States,</u> 336 U.S. 440, 69 S.Ct. 176, 93 L.Ed. 790 (1949) ............24

<u>Mathews v. United States,</u> 485 U.S. 58 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) ..............22

<u>Miller v. Terhune</u> 510 F.Supp.2d. 486 (E.D.Cal. 2007) .................................................18

<u>Mullaney v. Wilbur</u> 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ......................4

<u>Parle v. Runnels</u> 505 F.3d 922 (9th Cir. 2007) ....................................................17, 23, 24

<u>People v Barton</u> 12 Cal.4[th] 186 (1995) ...................................................................... 9-10

<u>People v. Breverman,</u> 19 Cal.4[th] 142 (1998)........................................................... Passim

<u>People v. Cole</u> 33 Cal.4[th] 1158 (2004)........................................................................8, 9

<u>Pirtle v. Morgan</u> 313 F.3d 1160 (9th Circuit 2002) .................................................3, 11, 12

<u>People v. Wharton</u> 53 Cal.3d 522 (1991) .....................................................................22

<u>Stevenson v. United States</u> 162 U.S. 313 16 S.Ct. 389, 842, 40 L.Ed. 980 (1896) .....4, 9

<u>Strickland v. Washington</u> 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d. 674............ Passim

<u>United States v. Benveniste</u> 564 F.2d 335 (1977) ...........................................................16

<u>United States v. Slaughter</u> 891 F.2d 691 (9th Cir. 1998)................................................16

<u>United States v. Gaudin</u> 515 U.S. 506 (1995)..................................................................4

<u>United States v. Paguio</u> 114 F.3d 928 (9th Cir. 1997).............................................15, 16

<u>Wiggins v. Smith</u> 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 471 (2003)....................5, 6

<u>Williams v. Taylor</u> 529 U.S. 362, 120 S. Ct. 1495, 146
    L. Ed. 2d. 389 (2000)...........................................................................................5, 6

## <u>UNITED STATES CONSTITUTION</u>

<u>Page</u>

Fifth Amendment -----------------------------------------------------------------------Passim
Sixth Amendment -----------------------------------------------------------------------Passim
Fourteenth Amendment -----------------------------------------------------------------Passim

## <u>TEXTS, STATUES AND AUTHORITIES</u>

<u>Page</u>

AEDPA -----------------------------------------------------------------------------------Passim

Cal. Evidence Code
    § 210 -----------------------------------------------------------------------------------13
    § 1103-----------------------------------------------------------------------------------14

Cal.Pen.Code §§ 189 and 192------------------------------------------------------------ 19

FREDERIC BAKER (SBN: 50055)
Attorney at Law
San Francisco Design Center
2 Henry Adams Street M71
San Francisco, CA 94103
Telephone: (415) 626-5133

**Attorney for Petitioner**


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


ANDREW WADSWORTH,                          ) No: C 07-5241 MMC
     Petitioner,                          )
                                          )
                                          ) PETITIONER'S REPLY BRIEF
                                          )
                                          )
MATTHEW C. KRAMER, WARDEN                   )
AND THE ATTORNEY GENERAL                    )
OF THE STATE OF CALIFORNIA                  )
_____            )

**I.**
**LEGAL STANDARD OF REVIEW**


     The California Court of Appeal held that there was no testimony at the trial that supported the proposition that the petitioner Wadsworth was acting in the heat of passion at the time that he shot Antonio Young. And the Petition for Review in the California Supreme Court only considered the trial record and the opinion of the California Court of Appeal.

-1-

However, the petitioner Wadsworth filed a petition for a Writ of Habeas Corpus in the California Supreme Court. In that petition Mr. Wadsworth executed a declaration that he was enraged at the time that he shot Anthony Young. And he further declared that his trial attorney never asked him whether he acted in the heat of passion. And he also declared that his trial attorney made no attempt to investigate whether or not he acted in the heat of passion.

Furthermore, the petitioner Wadsworth declared that his trial attorney, Brian Hong, never asked him how he could locate any witnesses that Antonio Young had shot people on two occasions prior to August 16, 2001. And Mr. Wadsworth also declared that to his knowledge Brian Hong never made any effort to investigate whether Antonio Young had shot other people on other occasions prior to August 16, 2001.

The California Supreme Court decided Mr. Wadsworth's Petition for a Writ of Habeas Corpus without a written opinion and without the citation of any authority. Therefore, it is impossible to know the reasoning upon which the California Supreme Court relied in making its decision.

The United States Supreme Court cases require the Federal Courts to determine whether the decision of the state court was objectively unreasonable. But without knowing what the reasoning of the state court was, the U.S. District Court is required to make an independent review of the record to determine whether the state court erred in its application of the controlling Federal law. Delgado v. Lewis 223 Fed 3d. 976, 982 (9th Circuit 2000).

Therefore, in this case the District Court is required to make an independent review of the record as to whether the trial counsel's failure to investigate whether the petitioner acted in the heat of passion, and trial counsel's failure to request instructions concerning heat of passion (and manslaughter committed in the heat of passion) constituted a violation of the Sixth Amendment

right to counsel as set forth in <u>Strickland v. Washington</u> 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d. 674; <u>Pirtle v. Morgan</u> 313 F3d. 1160, 1167 (9th Circuit 2002).

Furthermore, the District Court is required to make an independent review of the as to whether trial counsel's failure to investigate whether Antonio Young had shot other persons prior to August 16, 2001 constituted ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and <u>Strickland</u>; <u>Pirtle v. Morgan</u> 313F2d 1160, 1167 (9th Circuit 2002).

However, the admissibility of Antonio Young's statements that he had shot other persons in the past should be decided by the standard of objective reasonableness Likewise, the issue of the admissibility of prior acts by Andrew Wadsworth and Tracey Hill should also be considered by the standard of objective unreasonableness.

## II.
**THERE WAS NO INCONSISTENCY BETWEEN A THEORY THAT THE PETITIONER WADSWORTH ACTED IN THE HEAT OF PASSION AND THE THEORY THAT HE ACTED IN AN UNREASONABLE BELIEF THAT HE WAS JUSTIFIED IN ACTING IN SELF DEFENSE TO REDUCE THE OFFENSE FROM MURDER TO THE LESSER CRIME OF VOLUNTARY MANSLAUGHTER**

The attorney general says several times in his brief that trial counsel reasonably elected or decided to pursue a defense of self defense and reject a less plausible defense of voluntary manslaughter in the heat of passion. The attorney general uses this premise to reach the conclusion that there was no ineffectiveness of counsel in violation of the Sixth Amendment. A crucial premise of the attorney general's argument is that there is a logical inconsistency between a defense that a person kills another in the heat of passion and a defense that a person kills another with an unreasonable belief that they were acting in defense of their person (imperfect self defense). This is neither United States Supreme Court nor California Law.

PETITIONER'S REPLY BRIEF

In <u>People v. Breverman</u>, 19 Cal.4th 142 (1998) the California Supreme Court considered whether a theory of heat of passion and unreasonable self defense could be supported in the same case by the evidence. The California Supreme Court concluded that both theories which support a lesser included defense (to murder) of voluntary manslaughter could be present in the same case and that the jury be instructed as to both theories. <u>People v. Breverman</u>, pgs 162-163: "substantial evidence to support instructions on a lesser included offense may exist even in the face of inconsistencies presented by the defense itself."

In footnote ten page 163 the California Supreme Court said explicitly that both theories of voluntary manslaughter could be supported by the evidence: "This means that substantial evidence of heat of passion and unreasonable self-defense may exist, and the duty to instruct sua sponte may therefore arise, even when the defendant claims that the killing was accidental, or that the states of mind on which these theories depend were absent." <u>id</u> at 163

It is important to realize that the decision in <u>Breverman</u> is supported by the United States Supreme Court cases of <u>United States v. Gaudin</u> (1995) 515 U.S. 506, 522-523, 115 S.Ct. 2310, 132 L.Ed.2d. 444 and <u>Mullaney v. Wilbur</u>[1] (1975) 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d. 508. Although these Supreme Court cases are not cited by the majority opinion in <u>Breverman</u>, they are carefully analyzed in Justice Kennard's dissent in <u>Breverman</u>. Therefore, it is clear now (and at the time of the trial) that there is no inconsistency between a defense theory of heat of passion and a defense theory of unreasonable self defense.

---

[1] And it is also supported by the United States Supreme Court case of <u>Stevenson v. United States</u> 162 U.S. 313, 320-322, 16 S.Ct. 389, 842, 40 L.Ed. 980 (1896). In that case the Supreme Court considered whether a defendant who shot another person had the right to have the jury decide whether he was acting in the heat of passion when he shot the other person. Of course in Stevenson there was no possibility of a theory of imperfect self defense available to reduce the offense from murder to manslaughter. But Stevenson makes it clear that a criminal defendant has the right to have the jury consider whether he has committed a greater offense than voluntary manslaughter on a theory that he acted in the heat of passion.

PETITIONER'S REPLY BRIEF

**III.**

**DEFENSE COUNSEL FAILED TO INVESTIGATE WHETHER THE PETITIONER WADSWORTH WAS ENRAGED AND ACTING IN THE HEAT OF PASSION AT THE TIME OF THE SHOOTING; TRIAL COUNSEL'S PERFORMANCE FELL BELOW THE OBJECTIVE STANDARDS OF REASONABLENESS UNDER THE PREVAILING PROFESSIONAL NORM**

The petitioner has stated in his declaration that his trial counsel never asked him whether he was enraged or acting in the heat of passion at the time of the shooting.

The United States Superior Court has set forth the standard for evaluating a claim of ineffective assistance of counsel based on counsel's failure to investigate. The reasonableness of the investigation depends on the context of the case. But a trial attorney's strategic decisions can't be upheld if he has failed to properly investigate the potential trial issues. Wiggins v. Smith 539 U.S. 510, at 522, 123 S. Ct. 2527, 156 L. Ed. 471 (2003); Williams v. Taylor 529 U.S. at 362, 395-396 120 S. Ct. 1495, 1514-1516, 146 L. Ed. 2d. 389, 1413 (2000).

In this case the defense attorney was well aware that an empty holster had been found on Antonio Young's body. And also the petitioner Wadsworth testified that Antonio Young had produced a firearm from the holster and told Mr. Wadsworth that he heard the Mr. Wadsworth's "uncle was out to kill him." And finally Mr. Wadsworth testified that Mr. Young had told him that he had shot other people in the past.

All of these factors were relevant to a theory of perfect or imperfect self-defense which defense counsel presented. But these same factors were relevant to a theory of heat of passion (which was not presented). However, defense counsel never investigated whether the petitioner Wadsworth was acting in the heat of passion when he shot Antonio Young. In fact, the defense

attorney never asked the petitioner Wadsworth whether he was enraged or acting in the heat of passion when he shot Antonio Young and he never investigated whether there were any other facts surrounding the shooting which supported either the objective or subjective requirements of heat of passion voluntary manslaughter.

The attorney claims that "the State Supreme Court could have concluded that counsel reasonably thought self-defense to be better than heat of passion" (Respondent's Brief and Memorandum in Support of Answer page 6, lines 7-9). The attorney general also claims that (petitioner) "failed to show that counsel's choice of that defense over heat of passion was unreasonable." (RB page 6 lines 5-6).

But this argument presupposes that trial counsel was required to make an election between reasonable or unreasonable self-defense, and presenting a defense that the petitioner acted under the heat of passion to reduce the offense to voluntary manslaughter.

As stated above in People v. Breverman, supra, the California Supreme Court made it clear that a heat of passion theory is not inconsistent with perfect or imperfect self-defense if the facts support both theories. Breverman supra 162-163.

In this case defense counsel did not even investigate whether the petitioner Wadsworth acted in the heat of passion. Hence within the context of this case, the defense attorney did not meet the required professional norms set forth by the Supreme Court in Wiggins v. Smith and Williams v. Taylor.

In Jennings v. Woodford 290 F.3d. 1006 (9th Cir. 2002) the 9th Circuit found that the defense attorney's failure to investigate the prisoner's mental health and drug abuse "fell below the minimal standards of effectiveness that can reasonably be expected of defense counsel." Jennings supra at p. 1019.

-6-

The attorney general also claims that "counsel could reasonably have thought that self-defense be far better than heat of passion" Respondent's brief page 6 lines 8-9. But even this claim is unfounded. The petitioner Wadsworth shot Antonio Young several times even after he was disabled. The jury may have concluded that the last shot could not possibly have been fired in an unreasonable belief in self-defense. However, the jury might have concluded that the petitioner Wadsworth was acting in the heat of passion at the time he fired that last bullet into Antonio Young.

Therefore, the failure to even investigate whether the petitioner Wadsworth acted in the heat of passion was ineffective assistance of counsel.

## IV.
**DEFENSE COUNSEL FAILED TO REQUEST A JURY INSTRUCTION ON THE THEORY THAT PETITIONER WADSWORTH ACTED IN THE HEAT OF PASSION AND COULD HAVE BEEN FOUND GUILTY OF A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER ON THAT THEORY; TRIAL COUNSEL'S PERFORMANCE FELL BELOW THE OBJECTIVE STANDARDS OF REASONABLENESS UNDER THE PREVAILING PROFESSIONAL NORM**

The California Supreme Court made it clear in People v. Breverman, supra, that a defendant who provides substantial evidence of reasonable or unreasonable self-defense may also be entitle to an instruction on heat of passion manslaughter. There must be adequate provocation to require the heat of passion instruction be given. The court in Breverman described the provocation as follows:

1
2
3
4
5
6
7
8
9

" … a sizeable group of young men, armed with dangerous weapons and harboring a specific hostile intent, trespassed upon domestic property occupied by defendant and acted in a menacing manner. This intimidating conduct included challenges to the defendant to fight, followed by use of the weapons to batter and smash defendant's vehicle parked in the driveway of his residence, within a short distance from the front door. Defendant and the other persons in the house all indicated that the number and behavior of the intruders, which defendant characterized as a 'mob,' caused immediate fear and panic. Under these circumstances, a reasonable jury could infer that defendant was aroused to passion, and his reason was thus obscured, by a provocation sufficient to produce such effects in a person of average disposition.
 A rational jury could also find that the intense and high-wrought emotions aroused by the initial threat had not had time to cool or subside by the time defendant fired the first few shots from inside the house, then emerged and fired the fatal second volley after the fleeing subjects." <u>Breverman</u>, supra pgs 163-164

10
11
12
13

The California Supreme Court in <u>Breverman</u> concluded that these circumstances were adequate provocation to require the court to give the instructions on heat of passion as a theory of voluntary manslaughter. <u>Breverman</u>, supra, pg. 164

14
15
16
17

The attorney general cites several cases in which the victim had insulted or taunted the defendant.  In these cases the court determined that there was no provocation that justified the heat of passion instruction.

18
19
20
21
22
23

In <u>People v. Cole</u> 33 Cal.4th 1158, 1216 (2004) the California Supreme Court held that the record did not contain substantial evidence to support a voluntary manslaughter instruction on the theory that Cole was acting in the heat of passion when he killed his girl friend. The court held that "to satisfy the objective or 'reasonable person' element … of voluntary manslaughter the accused's heat of passion must be due to 'sufficient provocation.'" <u>Cole</u> supra at 1216

24
25
26
27

The court in <u>Cole</u> noted that the argument between Cole and Mary Ann (his girlfriend) was no different than the arguments they had on many occasions in their five year relationship. Even though Mary Ann made an implied threat to Cole, the court concluded it was not adequate

28

provocation to arouse the heat of passion in a reasonable person given their stormy relationship. Id at 1217.

In petitioner's case Antonio Young made an implied threat to him at the same time that Mr. Young produced a firearm from a holster. The production of a firearm together with an implied threat would likely to arouse the heat of passion in a reasonable person. Since in petitioner's case there were more than mere insults and threats, Cole is inapposite.

In Stevenson v. U.S. 162 U.S. 313, 322, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896) the United States Supreme Court considered whether firing a pistol at someone might be enough to arouse the heat of passion in a reasonable person. The court in Stevenson stated:

> "It seems to us quite plain, that an assault upon another by means of firing a pistol at him, is naturally calculated to excite some kind of passion in the one upon whom such an assault is made. It might be one of anger or it might be terror. If either existed to a sufficient extent to render the mind of a person of ordinary temper incapable of cool reflection, it might be plausibly claimed that the act which followed such an assault was not accompanied by the malice necessary to constitute the killing murder. Whether such a state of mind existed in this case, and whether the plaintiff in error fired the shot under the influence of passion and without malice, cannot be properly regarded as a question of law.
> … it is the providence of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder or manslaughter."
> Stevenson, supra at 322-323

Although the victim in Stevenson fired his weapon at the defendant and Antonio Young only displayed the firearm to petitioner Wadsworth as he made an implied threat, the facts of Stevenson are much closer to the petitioner's case than Cole (where no firearm was displayed). Hence the controlling authority is Stevenson and not Cole.

The attorney general attempts to distinguish the case of People v Barton 12 Cal.4th 186 (1995) in which the court held that there was adequate provocation to justify the heat of passion instructions. The victim in Barton had been involved in a road rage incident with the defendant's

daughter. Later when the victim had confronted the defendant, the victim assumed a fighting stance and taunted the defendant.

The attorney general cites the following statement from the Petition for Habeas Corpus "Antonio Young used far more than mere words and fighting stances." (Attorney General's answer, page 7) And the attorney general says that "Petitioner does not explain what he means by 'far more.' He neither specifies the evidence to which he is referring nor shows how it constituted 'far more' evidence of provocation than in <u>Barton</u>." (Attorney General's answer, page 7)

But Antonio Young reached inside his pocket and produced a handgun which he displayed to the petitioner as he made a threatening illusion that petitioner's uncle was "out to kill him." The actions of Antonio Young constitute far more evidence than the taunts and fighting stance assumed by the victim in <u>Barton</u>. Thus, if there was sufficient provocation to justify a heat of passion instruction in <u>Barton</u> a fortiori there was sufficient evidence in petitioner's case.

The attorney general further claims "Whatever 'far more' evidence of provocation petitioner is referring to was indistinguishable from the evidence the defense said showed the need for self-defense , which means that defense counsel did not unreasonably choose self-defense over heat of passion." (RB. page 7) This is a non sequitur.

The fact that the evidence which supported the theory of self-defense (whether reasonable or unreasonable) may also support the theory that the defendant acted in the heat of passion does not justify the defense attorney's decision to jettison a viable defense.[2]

---

[2] The flaw in the attorney general's argument is that he assumes the defense counsel must elect between requesting self-defense and requesting voluntary manslaughter instructions. And he further assumes that the choice of one defense over another would be reasonable. But as pointed out above in <u>Breverman</u> the California Supreme Court has held that both instructions must be given if the evidence supports each theory of defense. Therefore, in a properly investigated defense it would not have been reasonable for a defense attorney to request an instruction on a self-defense theory and not request an instruction under the theory of heat of passion manslaughter.

The case of <u>Pirtle v. Morgan</u> 313 F.3rd 1160 (9th Cir. 2002) may be on all fours with petitioner Wadsworth's case. In that case the defense attorney failed to request an instruction on an additional theory of defense.

The defendant in <u>Pirtle</u> had been convicted of aggravated first degree murder and sentenced to death. The defense focused on the defendant's state of mind at the time of the homicide.

There was testimony that the defendant Pirtle had ingested cocaine and methamphetamine prior to the killings. The trial court in <u>Pirtle</u> gave a voluntary intoxication instruction as requested by the defense. The instruction stated in relevant part that "…evidence of intoxication by alcohol and drugs may be considered in determining whether or not the defendant acted with intent or premeditated intent to kill." <u>Pirtle</u> supra pg 1164

But there was also testimony from the defendant Pirtle that he "snapped" before committing the murders. And this claim was supported by the testimony of three clinical psychologists and a neuropharmacologist. The accumulative effect of the testimony of these four medical experts was that due to physical damage to Pirtle's brain, he could not premeditate before the time of the killings. But the defense attorney failed to request an instruction as to diminished capacity at the time of the killings.

The Court of Appeal of the Ninth Circuit held that Pirtle's counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to request a jury instruction as to diminished capacity. <u>Pirtle</u> supra pg 1169. The court held that the intoxication instruction that was given prevented the jury from considering Pirtle's argument that he was incapable of premeditating the murders because of a mental disorder caused by chronic drug use.

It is significant that the court in <u>Pirtle</u> held that when there is substantial evidence of diminished capacity, the defense attorney must request that the jury be instructed on that theory of defense. The court in <u>Pirtle</u> ruled that the instruction as to voluntary intoxication was inadequate to guide the jury as to Pirtle's lack of capacity to premeditate the murders. The court held that the theory that the defendant Pirtle was unable to premeditate the murders because of voluntary intoxication was materially distinct from the theory that he lacked the capacity to premeditate the murders. <u>Pirtle</u> supra pg 1170-1171

In the same way, in petitioner's case the defense attorney requested instructions as to perfect and imperfect (unreasonable) self-defense. But he never requested instructions on the theory that the petitioner acted in the heat of passion. Thus the jury was never given the opportunity to consider whether petitioner should have been convicted of voluntary manslaughter on a heat of passion theory.[3]

## V.
## THE STATEMENTS OF ANTONIO YOUNG THAT HE HAD SHOT PERSONS ON TWO OCCASIONS IN THE PAST WERE RELEVANT TO ESTABLISH THE OBJECTIVE CIRCUMSTANCES THAT JUSTIFY A HEAT OF PASSION INSTRUCTION

The attorney general claims that the truth of Antonio Young's statements were not

"…critical to the defense for another reason. As far as this record shows, petitioner had no way of knowing whether Young's supposed statements were true. Accordingly, their truth was **irrelevant**. All that mattered for petitioner's defense of self-defense and imperfect self-defense was that petitioner might have believed that Young was ready to shoot him, given that, supposedly, Young had said he had used a weapon in the past. Defense counsel made this point in closing argument. RT 995.

---

[3] In fact the prosecutor explained to the jury what constituted a killing in the heat of passion. She told them that was a theory of voluntary manslaughter. But she also told them that they could not consider this theory because the trial judge was not going to instruct them as to heat of passion. Reporter's Transcript pg 941 lines 18-28; Reporter's Transcript pg 942 lines 3-5

PETITIONER'S REPLY BRIEF

Petitioner does not explain how the defense would have been any more persuasive if Young's statements had been admitted for their truth." RB page 10, lines 6 – 12.

But the attorney general's argument assumes that the only viable theory available to the petitioner Wadsworth was self-defense. Instead, as argued above, the stronger theory was that the petitioner acted during the heat of passion. The truth of the statements that Mr. Wadsworth had assaulted persons in the past were relevant to prove the objective circumstances that supported the theory that he acted in the heat of passion.[4]

One of the objective circumstances (and probably the most significant objective circumstance) to support an instruction on heat of passion manslaughter was the fact that Antonio Young displayed a firearm to the petitioner Wadsworth immediately before the shooting on August 16, 2001. As the attorney general points out "No gun was found on or near Young when the police reached him, five minutes or less after the shooting." RB page 2, lines 25-26. And the attorney general also accurately points out "Young was carrying a holster in his pocket." RB page 3, lines 2-3.

However, the attorney general also points out "The prosecutor argued that a gun could not have fit in the holster and been retrievable by Young without him reaching into his pocket with two hands. RT 968-69. Petitioner testified that Young reached into his pocket with one hand to get the gun." RB page 3, lines 3-5. In this way the attorney general suggests that Mr. Young never had a firearm on August 16, 2001 and consequently could not have displayed a firearm to the petitioner Wadsworth.

---

[4] "Relevant evidence" means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action. California Evidence Code Section 210

However, the petitioner Wadsworth testified that Antonio Young had told him that he had shot two persons on other occasions. Thus, the truth of that statement would gainsay the prosecutor's suggestion that Antonio Young did not display a firearm on August 16, 2001. So the fact that Antonio Young had shot persons in the past would tend to prove that in fact he was carrying a firearm on August 16, 2001 and that he displayed that firearm to the petitioner Wadsworth.[5]

And if Mr. Young had in fact displayed a firearm to Mr. Wadsworth at the time he made a hostile statement to the petitioner, this could have provided the objective circumstances (adequate provocation) to justify an instruction as to heat of passion manslaughter. So the conclusion must be that Antonio Young's statement that he had shot two persons on prior occasions was in fact relevant to petitioner's theory that he acted in heat of passion.

## VI.
### DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE WHETHER ANTONIO YOUNG HAD IN FACT SHOT PERSONS ON TWO PRIOR OCCASIONS

The defense attorney never questioned the petitioner Wadsworth to determine whether there were any witnesses to the incident where Antonio Young had shot persons in the past. Nor did he ask Mr. Wadsworth the identity of the persons who were shot by Mr. Young. Nor is there

_____

[5] Section 1103 of the California Evidence Code states in relevant part: "(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is:

(1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

anything to indicate that the defense counsel attempted to review police reports, or autopsy reports to corroborate the information that Mr. Young had shot persons in the past.

As stated above, in <u>Jennings v. Woodford</u> 290 F.3d 1006 (9th Cir. 2000), the 9th Circuit found that the defense attorney's failure to investigate the prisoner's mental health and drug abuse "fell below the minimal standards of effectiveness that can reasonably be expected of defense counsel." <u>Jennings</u> supra at p. 1019. In this case, defense counsel took no steps to corroborate his client's testimony. Hence the level of representation was far below the standards set forth in <u>Jennings v. Woodford</u>.

**VII.**

**THE LIMITATION OF THE STATEMENT OF ANTONIO YOUNG THAT HE SHOT PERSONS ON TWO PRIOR OCCASIONS FOR A NON-HEARSAY PURPOSE WAS A VIOLATION OF THE PETITIONER'S RIGHT "TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR" AS SET FORTH IN THE SIXTH AMENDMENT**

The petitioner has claimed that it was improper to limit Antonio Young's statements that he had shot persons in the past for a non-hearsay purpose. The petitioner claims that such limitation was a violation of his right to produce witnesses under <u>Chambers v. Mississippi</u>. The attorney general asserts that the "petitioner's claim fails because it utterly misreads <u>Chambers</u>." RB page 9, line 18.

However the attorney general ignores the Ninth Circuit cases subsequent to <u>Chambers</u> which have added to our understanding of <u>Chambers</u>. In <u>United States v. Paguio</u> 114 F.3d 928 (9th Cir. 1997) the court considered a statement made by the defendant's father (who was unavailable at the trial) which implicated the father and exculpated the defendant. The court in <u>Paguio</u> stated in relevant part:

"Prosecution use of an unavailable declarant's accusation of the defendant, as in Williamson, raises different concerns from a defendant's use of an unavailable declarant's confession which exonerates him….When the defendant seeks to introduce the evidence, but is unable to procure the attendance of the witness, the relevant Constitutional right is the accused's right 'to have compulsory process for obtaining witnesses in his favor.' U.S. Const. amend. VI. The accused's right to present witnesses in his own defense may be implicated where an absent declarant's testimony is improperly excluded from evidence. See United States v. Slaughter, 891 F.2d. at 698." Id at 934.

And the Ninth Circuit stated as follows in the earlier case of United States v. Benveniste 564 F.2d 335 (1977):

"The exclusion of this evidence deprived appellant of crucial substantiation of his asserted defense of entrapment and thereby deprived him of a fair opportunity to defend against the Government's accusations. The Supreme Court has stated: "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), Benveniste, supra pg 341

In petitioner's case, as in Paguio, the issue was whether the statement against penal interest should be admitted despite the limited of the hearsay rule. The court in Paguio concluded that the accused's right to present witnesses required that the statements should be introduced. Thus, it was constitutional error under the Sixth and Fourteenth Amendments to the United States Constitution to not admit for its truth petitioner's testimony that Antonio Young had shot persons on two other occasions.

## VIII
## THE ADMISSION OF PRIOR MISCONDUCT OF THE PETITIONER WADSWORTH AND THE WITNESS TRACY HILL WERE VIOLATIONS OF HIS RIGHT TO DUE PROCESS

The defense witness Tracy Hill testified that on four or five occasions she had seen Antonio Young with a firearm either in the holster or in his waistband. RT 708-713. The trial court

allowed Ms Hill to be impeached with evidence that she had been convicted of selling cocaine, theft, assaulting a police officer, and prostitution. RT 703, 704, 708, 709

Mr. Wadsworth was impeached with evidence that he had brandished a firearm and that he had sold drugs. RT 722, 745-750.

The petitioner claims that the admission of these prior incidents involving himself and Ms. Hill was a violation of rights to due process. The attorney general responds that "The admission of evidence against a defendant violates due process only if its admission renders the trial fundamentally unfair." RB page 12, lines 9-10

In the recent case of Parle v. Runnels 505 F.3d 922 (9th Cir. 2007) the Ninth Circuit held that the trial court erred in admitting character evidence that the defendant had threatened a police officer five years before the offense. The court held that the admission of his testimony was a violation of the petitioner's Right to Due Process as afforded by the Fifth and Fourteenth Amendments to the United States Constitution. The court in Parle held that the admission of this testimony did in fact contribute to the unfairness of the trial.

In the same way the admission of the prior misconduct by the petitioner Wadsworth and his witness Tracy Hill contributed to the fundamental unfairness of his trial.

**IX.**
**UNDER THE AEDPA STANDARD OF REVIEW TRIAL COUNSEL'S PERFORMANCE WAS INADEQUATE AND THERE WAS A PROBABILITY OF A DIFFERENT RESULT SUFFICIENT TO UNDERMINE CONFIDENCE IN THE OUTCOME; THE STATE COURT'S APPLICATION OF <u>STRICKLAND V. WASHINGTON</u> WAS CLEARLY ERRONEOUS**

**A.**
**TRIAL COUNSEL'S FAILURE TO INVESTIGATE THE THEORY THAT THE PETITIONER ACTED IN THE HEAT OF PASSION**

PETITIONER'S REPLY BRIEF

The petitioner Wadsworth has executed a declaration that he was acting under the heat of passion when he shot Antonio Young. And the petitioner has further declared that his trial counsel never asked him whether he was acting in the heat of passion. Nor did his trial counsel ever ask the petitioner whether he knew of any witnesses that had seen Antonio Young shoot persons on two other occasions. Given the circumstances of the shooting, it was unreasonable for trial counsel to fail to investigate whether the petitioner had in fact acted in the heat of passion.

On the one hand, the attorney general claims that there was not adequate provocation to support a theory that the petitioner acted in the heat of passion. But on the other hand, the attorney general claims that the defense attorney had no duty to investigate the heat of passion defense. In his brief the attorney general claims that "…the state supreme court could reasonably have concluded that trial counsel could reasonably have determined that the evidence of provocation was unpersuasive." RB page 6, lines 20-22. So the attorney general's argument appears to be that as long as the defense attorney fails to investigate a possible theory of defense, there can be no duty to develop such a defense.[6]

This is not the law under the United States Constitution. In <u>Jennings v. Woodford</u> cited above the court cited the failure of the defense attorney to investigate the failure to investigate a theory of defense:

> "We conclude that a reasonably effective attorney who had undertaken an appropriately diligent investigation would likely have opted for a mental defense strategy. Because Mr. Jennings' alibi defense was weak and uncorroborated, and given the wealth of mental health and drug abuse evidence at the ready, effective counsel almost certainly would have made an effort to raise reasonable doubt as to

---

[6] In <u>Miller v. Terhune</u> 510 F.Supp.2d. 486 (E.D.Cal. 2007) the district court reasoned as follows: "First, even if there were two inconsistent theories of defense, a matter far from clear, the choice between the two theories was made without adequate investigation.  That there were two possibly conflicting theories does not excuse the failure to investigate. As previously discussed, choosing a defense strategy without prior investigation into the alternative theories constitutes unreasonable performance on the part of the trial attorneys." (Citing <u>Jennings</u>) <u>Id at 500</u>

Mr. Jennings' intent and his ability to undertake a 'willful, deliberate, and premeditated killing' and his ability to act with 'malice.'" Cal.Pen.Code §§ 189 and 192 (1981)." <u>Jennings v. Woodford</u> 290 F.3d. 1006, 1019 (9th Cir. 2002)

In the same way, trial counsel failed to investigate the theory that the petitioner Wadsworth acted in the heat of passion. And if the trial counsel in the petitioner Wadsworth's case had properly developed the theory that he had acted in the heat of passion, it is reasonably probable that the jury would have found that he lacked the mental state required for first degree murder Conviction.

In <u>Jennings v. Woodford</u> supra the Ninth Circuit reviewed the prejudice required by AEDPA as follows:

"It is reasonably probable that, apprised of all of the mental health and drug abuse evidence, it would have found a reasonable doubt as to Mr. Jennings' ability to form the intent required for a first degree murder conviction. Although we cannot be certain that the result would have been different, we find the probability of a different result 'sufficient to undermine confidence in the outcome.' <u>Strickland</u>, 466 U.S. at 695, 104 S.Ct. 2052." <u>Jennings v. Woodford</u> supra at page 1019

Therefore, <u>Jennings</u> controls the petitioner's case. The jury was never given the opportunity to consider whether the petitioner acted in the heat of passion due to his trial attorney's failure to investigate the issue. So under <u>Strickland</u> there was the probability of a different result "sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. 2052.

Thus, the decision of the California Supreme Court was clearly erroneous under the AEDPA standard.

PETITIONER'S REPLY BRIEF

**B.**

**TRIAL COUNSEL'S FAILURE TO INVESTIGATE THE INFORMATION THAT ANTONIO YOUNG HAD SHOT PERSONS ON TWO OTHER OCCASIONS**

The petitioner's Wadsworth declaration also states that his attorney never asked him about other witnesses or evidence that Antonio Young had shot other persons in the past. As the petitioner Wadsworth has argued in Section V, above this information was relevant to establish the foundation that there was adequate provocation that he acted in the heat of passion.

As stated in <u>Jennings v. Woodford</u> above, a trial attorney has a duty to investigate any plausible theory of defense. And it is also stated in <u>Jennings</u> the failure to investigate a theory of the defense can raise the probability of a different result "sufficient to undermine confidence in the outcome."

The failure of petitioner Wadsworth's trial counsel to investigate the information that Antonio Young had shot other persons on other occasions deprived the petitioner of evidence that there was adequate provocation for a theory of self-defense. Therefore, the failure to investigate this information showed a reasonable probability that the outcome would have been different. So the California Supreme Court's decision was clearly erroneous under the AEDPA standard of review.

**C.**

**THE TRIAL ATTORNEY'S FAILURE TO REQUEST THE HEAT OF PASSION INSTRUCTIONS FOR VOLUNTARY MANSLAUGHTER**

The attorney general argues that the trial attorney made a reasonable choice in requesting unreasonable self-defense instructions and declining to request instructions on heat of passion

manslaughter. But as argued above, there was no reason for counsel to make such a choice. See <u>Breverman</u> at pages 163, 164.

The attorney general makes two other arguments in an attempt to show that there was no probability of prejudice from the trial counsel's failure to request heat of passion instructions. The first argument is that "…the jury was instructed on second degree murder and on unreasonable self-defense voluntary manslaughter, yet rejected them both in favor of a find of first-degree (i.e. premeditated) murder." RB 7, lines 16-17.

But this argument begs the question. The fact that the jury was instructed on second-degree murder and on unreasonable self-defense manslaughter and rejected them, does not prove that the jury would also have rejected the theory that petitioner Wadsworth acted in the heat of passion. There is nothing in the instructions on second-degree murder or unreasonable self-defense manslaughter that negates a theory that the petitioner acted in the heat of passion. (In fact the phrase "heat of passion" is never even mentioned in these instructions.)

The attorney general's second argument is that the jury was instructed that:

"If the evidence[] establishes that there was provocation which played a part in inducing an unlawful killing of a human being, but provocation was not sufficient to reduce the homicide to manslaughter, you should consider the provocation for the bearing it may have on whether the defendant killed with or without premeditation and deliberation." RB page 7, lines 19-21,

The flaw in this argument is that the jury was never informed that the provocation could reduce the killing to voluntary manslaughter. Nor was it told what constituted adequate provocation to reduce an offense to voluntary manslaughter. Nor was the jury even told what constituted a heat of passion. Since the jury was never given a legal definition of provocation, it could have not rejected the defense theory that Mr. Wadsworth acted in the heat of passion at the

**PETITIONER'S REPLY BRIEF**

time that he killed Antonio Young. Therefore, the instruction given by the court on murder could not exclude the likelihood that the petitioner Wadsworth had acted in the heat of passion.

The attorney general also cites People v. Wharton 53 Cal.3d 522, 572 (1991) for the proposition that the jury implicitly found that the petitioner Wadsworth did not act in the heat of passion. But the distinction between the petitioner's case and Wharton is obvious. In Wharton the jury was instructed on the theory of heat of passion voluntary manslaughter, but convicted the defendant on first degree murder. The jury in petitioner's case was never instructed concerning heat of passion voluntary manslaughter. Hence the California Supreme Court's decision on Wharton is totally inapposite.

## X.
**TRIAL COUNSEL'S FAILURE TO REQUEST INSTRUCTIONS AS TO HEAT OF PASSION MANSLAUGHTER WAS ALSO A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT; THE CALIFORNIA COURTS' AFFIRMANCE DESPITE THE DUE PROCESS VIOLATION CONSTITUTED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

In Bradley v Duncan 315 F.3d 1091 (9th Cir. 2002) the Ninth Circuit Court of Appeal held that the California Courts had violated the petitioner Bradley's Right to Due Process by failing to instruct the jury as to the defense of entrapment.

The Ninth Circuit held that Bradley had properly raised entrapment in the trial court. Hence the failure to instruct the jury as to the theory of entrapment deprived him of his right to present a defense as guaranteed by the Due Process Clause. Bradley supra at 1098. See also Clark v. Brown 450 F.3d. 898, 905 (9th Cir. 2006).

It is significant that the court in Bradley relied on the United States Supreme Court Case of Mathews v. United States, 485 U.S. 58, 63 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) as a clear

Supreme Court authority that the failure to properly instruct the jury as to a recognized defense is an unreasonable application of clearly established federal law. Bradley supra at 1098.

In this case the petitioner Wadsworth was deprived of his Due Process Right to present a defense by his counsel's failure to request that the jury be instructed as to the theory of heat of passion voluntary manslaughter. Therefore, the failure to instruct as to the heat of passion also requires that the conviction be set aside under the AEDPA standard of review. See Barker v. Yukins, 199 F.3d 867, 875-76 (6th Cir. 1999).

## XI.
**THE CUMULATIVE EFFECT OF THE EVIDENTIARY ERRORS MADE DURING THE TRIAL VIOLATED THE PETITIONER'S DUE PROCESS RIGHTS; THE STATE COURT'S FAILURE TO GRANT RELIEF WAS AN OBJECTIVELY UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AND THUS WARRANTS FEDERAL HABEAS CORPUS RELIEF**

In the recent case of Parle v. Runnels 505 F.3d 922 (9th Cir. 2007) the Ninth Circuit Court of Appeal held that cumulative effect of evidentiary errors may deprive the defendant in a state court proceeding of his Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution.

In Parle the Court of Appeal (as well as the District Court) pointed out that evidence harmful to the defendant was erroneously admitted in the state court and evidence that was favorable to the defendant was erroneously excluded from the trial. It is important to note that the evidence erroneously excluded included the victim's character for violence. It is also noteworthy that the evidence admitted included impermissible evidence concerning the defendant's character which was several years old.

PETITIONER'S REPLY BRIEF

In petitioner Wadsworth's case the state court erroneously limited testimony (which should have been offered for the truth) that the victim Antonio Young had shot persons on two prior occasions. And the trial court also admitted evidence of prior misconduct against the petitioner Wadsworth and his main witness Tracy Hill. Therefore, <u>Parle</u> is apposite to the petitioner Wadsworth's case.

The cumulative effect of the trial court's evidentiary errors deprived the petitioner Wadsworth of his Right to Due Process under the Fifth and Fourteen Amendments to the United States Constitution.   The state court's decision was an unreasonable application of clearly established Federal Law as set forth in <u>Chambers v. Mississippi</u>, 410 U.S. 284, 93, S.Ct. 1038, 35 L.Ed.2d 297 (1973); <u>Krulewitch v. United States</u>, 336 U.S. 440, 69 S.Ct. 176, 93 L.Ed. 790 (1949); and <u>Hawkins v. United States,</u> 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1954).

## CONCLUSION

For the reasons set forth above and in the original Petition for a Writ of Habeas Corpus the petition should be granted.

DATED:    April 10, 2008

/s/ Fred Baker
Fred Baker
Attorney for Petitioner

PETITIONER'S REPLY BRIEF